# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

90  597
e101 518
c101 519
101  521

## COMMONWEALTH V. McCULLOUGH.

### SAME V. DAVIS AND AL.

### SAME V. BARRY.

### SAME V. McCULLOUGH AND AL.

#### MARCH 15th, 1894.

1. APPELLATE COURT—*Jurisdiction—Coupons.*—This court hath jurisdiction on appeal, of an action necessarily involving the validity of coupons cut from bonds issued under Acts March 30, 1871, and March 28, 1879, relating to the funding and payment of the public debt, and offered in payment of taxes, although less than the jurisdictional minimum is involved, as the validity of those acts is brought in question.

2. CONSTITUTION—*Coupons—Taxes—Schools.*—The coupons attached to the bonds issued under Acts March 30, 1871, and March 28, 1879, and expressed on their face to be receivable at and after maturity for *all* taxes, debts, dues, and demands due the State, evince an entire contract, incapable of separation; and such contract, being in violation of the constitutional provision in regard to setting apart the literary fund of the State for public school purposes in so far as it makes the school taxes payable in such coupons, (as decided by the U. S. Supreme Court in *Vashon* v. *Greenhow*, 135, U. S., 716), *held* wholly unconstitutional and void.

Error to four judgments of circuit court of city of Norfolk, rendered June 29th, 1892, in the cases of Commonwealth against A. A. McCullough, Same against James E. Barry, Same against M. L. T. Davis & Co., and Same against A. A. McCullough & Co.,

all of which cases are precisely alike, the same questions being involved in each of them. The judgments being adverse to the commonwealth, it brought them here upon writs of error. Opinion states the case.

*Attorney-General R. Taylor Scott, Ellis & Kerr,* and *H. R. Pollard,* for commonwealth.

*Maury & Maury,* for defendants in error.

RICHARDSON, J., delivered the opinion of the court.

These cases, like the *Virginia Coupon Cases,* decided in April, 1885, and reported in 114 U. S., 269, and like *Barry* v. *Edmunds* and other cases argued at the same time, decided in February, 1886, and reported in 116th U. S., 550, and also like the group of eight cases, including *McGalvey* v. *Virginia, Hucless* v. *Virginia,* and *Vashon* v. *Greenhow,* decided by the Supreme Court of the United States at the October term, 1889, and reported in 135 U. S., 664, etc., arise with respect to certain coupons alleged to have been cut from bonds of the commonwealth of Virginia, issued under an act of her general assembly, approved March 30, 1871, and entitled "An act to provide for the funding and payment of the public debt," or from bonds of said commonwealth issued under authority of an act of her general assembly, approved March 28, 1879, entitled "An act to provide a plan of settlement of the public debt," it being further alleged that said coupons "are by law receivable for taxes, debts, and demands due the State of Virginia."

The defendant in error, A. A. McCullough, who was the petitioner in the court below, on the 20th day of May, 1892, presented his petition in the circuit court of the city of Norfolk as follows :

Your petitioner, A. A. McCullough, respectfully represents unto your Honor that he is a tax-payer of the city of Norfolk.

That on the 30th day of April, 1892, being indebted to the State of Virginia $498, State tax, due by him on his real estate, other than school tax, and not liquor license tax, he tendered W. W. Hunter, treasurer of said city, and the officer appointed by law to receive said tax, in payment thereof $498 in past due coupons (as per schedule herewith), cut from bonds of the said commonwealth, issued under an act of the general assembly, approved March 30, 1871, and entitled "An act to provide for the funding and payment of the public debt," or from bonds of the said State issued under authority of an act of her general assembly, approved March 28, 1879, entitled "An act to provids a plan of settlement of the public debt," which said coupons are by law receivable for taxes, debts, and demands due the State of Virginia, who received the same for identification and verification and forwarded them to this court for that purpose, according to law (see his receipt therefor herewith filed, marked exhibit " B," and prayed to be taken as part of this petition). And thereupon your petitioner paid him the full amount of said tax in money. Your petitioner alleges that no part of the tax for which said coupons were tendered was set apart for or appertained to public school purposes, or the literary fund.

Your petitioner alleges that the said coupons are genuine legal coupons, past due, and legally receivable for all taxes, debts, and demands due the commonwealth of Virginia; and your petitioner prays that the State of Virginia be summoned to answer this petition, and that when said coupons are ascertained to be genuine, legal coupons, past due, and receivable for taxes, debts, and demands due the commonwealth of Virginia, this court will so certify, to the end that your petitioner may recover back the money so paid by him as aforesaid, according to law, and your petitioner will ever pray.

[Signed]       A. A. McCULLOUGH,
              *By J. W. Willcox, his Attorney.*

The case came on to be heard on the 29th of June, 1892, when the defendant, the commonwealth of Virginia, moved to dismiss the petition on the grounds that the acts approved March 30, 1871, and March 28, 1879, upon which those proceedings were based, are unconstitutional and void to the extent that the coupons attached to the bonds issued under each of these acts were thereby made "receivable for *all* taxes, debts, dues, and demands due the State." But the court overruled the motion, and the defendant excepted. Thereupon the defendant demurred to said petition; but the court overruled the demurrer. And then the defendant tendered five several pleas in writing, each of which was rejected; and to the action of the court overruling said demurrer and rejecting said pleas in writing, the commonwealth took her several exceptions.

The principal ground of demurrer, and the only one that need be mentioned here is this: That the acts in the petition mentioned are in conflict with the 7th and 8th sections of Article VIII of the Constitution of Virginia, and with sections 2 and 113 of the act of the General Assembly of Virginia passed in pursuance thereof, and approved March 15, 1884, to the extent that said acts of March 30, 1871, and of March 28, 1879, provide that the coupons therein mentioned shall be receivable after maturity for "*all* taxes, debts, dues and demands due the State, which shall be so expressed on their face."

It appears from the record that a jury was empannelled and sworn to try the issue, and responded by their verdict as follows: "We, the jury, find for the petitioner upon the issue joined, and we also find that the coupons mentioned in the petition are genuine, legal coupons, legally receivable for the taxes, debts, and demands due to the commonwealth of Virginia, for which they were tendered." And thereupon the circuit court adjudged and determined that "the said coupons are fully proved as genuine, legal coupons, legally receivable for the taxes, debts, and demands due the commonwealth, for which they were tendered."

At the instance of the defendant, the commonwealth of Virginia, the case is here on a writ of error to said judgment.

The first question for consideration arises upon the motion of the defendant in error to dismiss the writ of error awarded the commonwealth on the grounds, first, that the minimum jurisdictional amount is not involved; and, second, that the constitutionality of no law is involved. This question of jurisdiction, which confronts us at the threshold, presents no serious difficulty, and is easily disposed of. One of the questions involved in the issue tried, was whether the coupons tendered, were *legally* receivable for *all* taxes, debts, dues, and demands due the commonwealth of Virginia. There could be no other issue, because the said acts of March 30, 1871, and of March 28, 1879, respectively, provides expressly that the coupons attached to the bonds issued thereunder shall " be receivable at, and after maturity, for *all* taxes, debts, dues, and demands due the State;" and said acts expressly require that this be expressed on their face. Neither of said acts authorize coupons receivable, after maturity, merely for " taxes, debts, and demands due the State;" nor for taxes other than the fund dedicated by the constitution to the support and maintenance of the public free schools, and the liquor license tax. On the contrary, the language is, " for all taxes, debts, dues, and demands due the State, which shall be so expressed on their face." This quality of receivability presents the case of an entire contract that cannot be apportioned—a case where the bargain is one, the consideration is one, and the coupon covenant is one and inseparable; and, as the legal receivability of the coupons in question must depend upon the authority conferred by one or the other, or both, of the acts last above referred to, it would seem to follow, as a matter of course, that any coupon cut from bonds issued under either of said acts, that has not on its face the words " receivable, after maturity, for *all taxes, debts, dues,* and demands due," &c., is not a legally receivable coupon; or, in other words, is a coupon issued without authority of law.

Yet, in the petition, it is alleged that the petitioner being indebted to the State of Virginia $498, State tax, due by him on his real estate, *other than school tax, and not liquor license tax,* tendered to W. W. Hunter, treasurer of said city, and the officer appointed by law to receive said taxes in payment thereof, $498 in past due coupons,   *   *   *   cut from bonds of the said commonwealth, issued under an act of the General Assembly, approved March 30, 1871,   *   *   *   *or from bonds of the said State issued under authority of an act of her General Assembly, approved March* 28, 1879, &c.,   *   *   *   which said coupons *are, by law,* receivable " for *taxes, debts, and demands due the State of* Virginia, who reserved the same," &c.

This form of declaring on or describing the legal receivability of the coupons was evidently intended as a means of avoiding the necessary effect of the decisions of the Supreme Court of the United States in *Hucless* v. *Childrey* and in *Vashon* v. *Greenhow,* 135 U. S., 709 and 713, decided in 1889, and hereinafter to be more particularly referred to. It is, however, obvious that the coupons thus described could not be genuine, legal coupons, receivable for *all taxes, debts, dues, and demands* due the State.

But, notwithstanding the above description, which makes the coupons anything else than genuine, legal coupons, the petitioner proceeds to allege, in his petition, " that said coupons are genuine, legal coupons, past due, and legally receivable for *all* taxes, debts, and demands due the commonwealth of Virginia." Obviously the two conflicting descriptions cannot stand together; and it is equally clear that neither is an accurate description of a genuine, legal coupon, legally receivable for " *all* taxes, debts, *dues,* and demands" due the State. Such the coupons must be, or else they are unauthorized by law, and are not genuine, legal coupons, but are spurious and illegal. Coupons receivable " for taxes, debts, and demands due the State, other than the school fund and the liquor license tax, is altogether a different thing, in substance as well as form, from

coupons receivable for *all* taxes, debts, dues, and demands,"
&c. The former is without authority of law, and, therefore,
illegal and void; while the latter gives expression to the very
form and substance of the coupon contract, expressly pre-
scribed by the said acts of March 30, 1871, and of March 28,
1879. The statute of *Jeofails* has accomplished much in the
way of amendments, and of dispensing with matters in plead-
ing deemed immaterial; but that statute has never been car-
ried to the absurd extent of allowing one contract to be set up
in pleading, and allowing a recovery on a materially different
contract.

Moreover, the prayer of the petition is, "that a jury be im-
pannelled to try the question whether said coupons are genu-
ine, legal coupons, legally receivable "for taxes, debts, and
demands due the commonwealth of Virginia," &c. Thus
again attempting to set up unauthorized, illegal coupons in-
stead of genuine, legal coupons, receivable "for *all* taxes,
debts, dues, and demands due the State." The coupons, if
genuine, legal coupons, were, *ex vi termini*, receivable for *all*
taxes, debts, dues, and demands, or they were receivable for
none. The coupon feature of the contract is entire, and can-
not be separated into parts, and it must be valid as a whole, or
it is illegal and therefore invalid for any purpose.

The petitioner's informal, irregular, and illegal mode of pro-
cedure was evidently imparted to and influenced the mind of
the jury; that is, if we may judge by their peculiar verdict.
They say: "We, the jury, find for the petitioner upon the
issue joined, and we also find that the coupons mentioned in
the exhibit filed with the petition and presented to us by the
court—to-wit: coupons for $498—are genuine, legal coupons,
past due, and receivable for the taxes, debts, and de-
mands due the commonwealth of Virginia, for which they
were tendered," &c. And the judgment of the court was
"that the said coupons are fully proved as genuine, legal cou-
pons, past due, and receivable for the taxes, debts, and

demands due the commonwealth of Virginia, *for which they were tendered,"* &c. It is too plain for argument that there are not in existence any genuine, legal coupons, such as are thus described, cut from bonds issued either under the act of March 30, 1871, or that of March 28, 1879. If, then, the jury, instead of being sworn to try the issue, as prescribed by the statute, whether the coupons tendered were genuine, legal coupons, "receivable after maturity for *all* taxes, debts, dues, and demands due," &c., were sworn to determine whether the said coupons were genuine, legal coupons, legally receivable merely "for taxes, debts, dues," &c., or were so receivable "for the taxes, debts, and demands for which they were tendered" (and it appears from the record that they were, in effect, so sworn), then the jury were sworn to try an issue responsive to the description of the coupons mentioned in the petition, but entirely variant from, outside of, and beyond the coupon contract, and an issue at variance with that directed by the statute.

These were the matters necessarily involved in the commonwealth's motion to dismiss, and especially in her demurrer to the petition. The validity of a statute of the State was thus directly and unmistakably brought in question. The petition alleged that the coupons tendered were genuine, legal coupons, legally receivable for the tax for which they were tendered; the verdict of the jury was to the same effect, and such was the judgment of the court. Hence, the validity of the coupon feature of the acts of March 30, 1871, and of March 28, 1879, was necessarily involved, and had not the court below thought so, it could never have pronounced the judgment it did. It is, therefore, manifest that this court has jurisdiction of the cases.

We come now to the main question in the case, and that is whether the coupon feature of the funding acts, on which the proceedings in this case were based, are in conflict with the constitution of Virginia. But before entering upon the discussion of this question, which is one of great importance

both to the State and her creditors, it is important to refer to the fact that the indebtedness of Virginia has at last been justly, equitably, and satisfactorily settled by the State and her creditors, by an adjustment known as the "Olcott settlement." However, a small minority of such creditors who hold bonds and coupons, past due and to become due, amounting to about $2,300,000, obstinately hold out and refuse to accept the liberal terms of said settlement, and, with seeming remorseless vindictiveness, continue to harrass the State by a perpetual clamor for the stipulated "pound of flesh"; and this they do regardless of the state of poverty and wretchedness to which the people of Virginia were reduced at the time of the passage of the original funding bill of March 30, 1871; regardless of the fact that the old State, miserably poor and dependent in other respects, emerged from the unfortunate civil war in which she had become so disastrously involved, and in which her people honestly and bravely contended for what they believed to be right, to find herself, without her consent, stripped by the hand of governmental power, exercised as a necessary war measure, of one-third of her territory, population, and taxable values, and, in addition thereto, the loss to the residue of the old State of a vast property, upon the faith of which her debt had been contracted; regardless of the fact that the old State was, during the entire period of the war, the tramping ground, the battle ground, and burying ground of vast contending armies; and regardless of the fact that the Virginia people—men, women, and children—were so utterly poor that they were most indifferently supplied with food, and were unable to supply themselves with comfortable, and in numberless cases, even with decent clothing, and too poor to supply themselves with teams and implements essential to the cultivation of their fields, and that her children were growing up in ignorance, without the means of education. In addition to all this, the old commonwealth was deprived of her proud position of statehood and was reduced

to that of a conquered province, known as District No. 1. However deeply humiliating all this may be, it is at last but a feeble picture of the real poverty and suffering to which our people were reduced.   They only who are ignorant of the real state of facts can be excused for imputing dishonorable motives to the people of Virginia.   There is another class of persons who, urged on by illiberal and selfish views, or prompted by the vain desire for much speaking and writing, have been willing to contribute the weight of their influence, real or imaginary, to the ignoble cause of defaming a brave and generous people.   And by such people the public sentiment has been misled, and great wrong done to the State. But, notwithstanding all this, the true inwardness of this relentless war, by the coupon-holders against the State, was at last seen by the highest court of the land, as exemplified in its decisions in *Hucless* v. *Childrey* and *Vashon* v. *Greenhow*, *supra*, by which previous decisions of that court were greatly modified.

It is in the light of those two decisions that we now propose to consider the question as to the validity of the coupon feature of the original funding act of March 30, 1871.   We do not assail that act as unconstitutional as an entirety.   We simply hold that the coupon feature of the act, the coupon contract, which is readily separable from the rest of the act, is repugnant to sections 7 and 8 of article 8 of the constitution of Virginia, and is, therefore, an illegal contract.   The validity of the bonds issued under and by authority of said acts of March 30, 1871, and March 28, 1879, is not denied; nor is it denied that the bondholders are entitled to the interest on the bonds to be collected in the ordinary way; but we do deny that it can be collected through the medium of the illegal coupon, which have been most aptly designated the "cut worm of the treasury."

In considering whether or not the coupon feature of the act of 1871, is repugnant to said provisions of the State constitution, we will not repeat at length the constitutional arguments

which have been so often urged heretofore, which have engaged the serious attention of many of the ablest legal minds, and which have been deliberately passed upon by the Supreme Court of the United States. It is important, however, to repeat so much of the argument, judicial and otherwise, as supports the conclusion arrived at by this court, and seems to be, upon principle and authority, in perfect accord with the decisions of the Supreme Court of the United States in the cases of *Hucless* v. *Childrey* and *Vashon* v. *Greenhow, supra.*

Coming, then, directly to the question, whether the coupon contract is repugnant to said provisions of the State constitution, and therefore illegal and absolutely void, it may, with the utmost propriety, be said that the unfortunate decision by this court in *Antoni* v. *Wright*, 22 Gratt., 813, has indeed proved to be the "Iliad of all our woes" touching the State's indebtedness; and but for it there never could have been any difficulty in the way of a just and equitable adjustment between the State and her creditors. If this court, instead of making the decision it did in that case, had promptly pronounced against the palpably illegal and, therefore, unconstitutional coupon feature of the act of March 30, 1871, the debt would have been promptly settled, and all this long and bitter controversy avoided. *Antoni* v. *Wright* was decided by a bare majority of a court of three judges, Moncure, P., not sitting, and Staples, J., dissenting and insisting that the said act of March 30, 1871, which provides that the coupons attached to the bonds issued thereunder shall, after maturity, be receivable "for *all* taxes, debts, dues, and demands due the State," is repugnant to the State constitution, notwithstanding the opinion of the bare majority, that that feature of the act was not repugnant to the constitution, and constituted an irrepealable contract on the part of the State with the holders of such coupons.

In the opinion of the majority of the court, it was admitted that "one legislature cannot by an act of ordinary legislation, bind or control in any manner subsequent legislatures," but it

was said that " by special legislation amounting to a contract, a subsequent legislature may be bound." In the light of this admission, taken in connection with the exception stated, it would seem to be sufficient to reply that the ingenuity of man cannot suggest anything more essentially and completely within the scope of ordinary legislation than is the legislative power to assess, collect, control, and disburse, through recognized agents, the State revenues.

But, in *Antoni* v. *Wright*, it was not denied, nor is it desirable, that a good and sufficient consideration is essential to the validity of a contract. And the dissenting opinion of Judge Staples denied with evident correctness that there was any consideration going to the State for the concession in the funding act touching the receivability of such coupons for *all* taxes, &c., as the creditor gave up nothing in return, and the State remained bound by its bonds for two-thirds and by its certificates for the remaining third of its original indebtedness; and, as is axiomatic, asserted that there can be no valid contract founded on a law which violates the constitution of a State.

And Judge Staples, in his very able dissenting opinion, insisted also that the contract in this case was void, because of its repugnancy to sections 7 and 8 of article 8 of the constitution of Virginia, by which certain portions of the State revenue are dedicated to the support of public free schools. In the opinion of the majority, Judge Bouldin, speaking for the court, declared, in effect, that the duties to pay the public debt and to support the public free schools are both obligatory under the constitution, and that both may be discharged, and that there was no conflict between the funding act and section 8 of Article 8 of the constitution. In whatever crudity this idea may have originated, it is certain that the Supreme Court of the United States has arrived at a very different conclusion, as is shown by its decision in *Vashon* v. *Greenhow, supra.*

At all events, the opinion of the court in *Antoni* v. *Wright,* is pregnant with a tacit admission that if such conflict did exist,

then the funding bill providing that such coupons should be receivable in payment of *all* taxes, debts, dues, and demands due the State would be unconstitutional, at least to the extent of such conflict.   The authority of that decision has been recognized in several subsequent decisions of this court, as then constituted; and, in one of them, *Clark* v. *Tyler*, 30th Gratt., 134, decided in 1878, it was said that this decision (*Antoni* v. *Wright*) " must be held to be the settled law ̓of this State." And in that case (*Clark* v. *Tyler*) this court even held that fines, and in *Williamson* v. *Massie*, 33 Gratt., 237, the capitation tax, both of which had been by the constitution dedicated to public free schools, might be paid in such coupons.

At this juncture the legislature passed an act which was approved March 15, 1884, and which was referred to in the answer of Greenhow, treasurer, in the case of *Vashon* v. *Greenhow*, *supra*, requiring taxes assessed for public free school purposes to be collected and kept separate from other taxes, and forbidding the receipt of anything other than current money for such taxes.   This act was reviewed by this court in the case of *Greenhow, treasurer*, v. *Vashon*, 81st Va., 350, and was held constitutional and valid, notwithstanding the decisions in *Antoni* v. *Wright*, *Clark* v. *Tyler*, and *Williamson* v. *Massie*, *supra*, to the effect that such coupons were receivable in payment of *all* taxes, debts, dues, and demands due to the commonwealth. And the decision of this court in that case was affirmed on appeal by the Supreme Court of the United States.   See *Vashon* v. *Greenhow*, 135 U. S., 716.

We cannot forbear to quote from Mr. Justice Bradley, who pronounced the opinion of the court in that case, as follows : " The other ground on which the Court of Appeals (of Virginia) placed its decision was that the act of 1871, as applied to the moneys due and payable to the ' literary fund,' or fund for the maintenance of the public free schools, was contrary to the constitution of the State, adopted in 1869.   The 7th and 8th sections of the 8th article of the constitution declare as

follows: "Section 7. The general assembly shall set apart, as a permanent and perpetual literary fund the present literary fund of the State, the proceeds of all public lands donated by Congress for public school purposes, of all escheated property, of all waste and unappropriated lands, of all property accruing to the State by forfeitures and all fines collected for offences against the State, and such other sums as the general assembly may appropriate. Section 8. The general assembly shall apply the annual interest on the literary fund, the capitation tax provided for by this constitution for public free school purposes, and an annual tax upon the property of the State of not less than one mill and not more than five mills on the dollar for the equal benefit of all the people of this State." * * * The learned justice then proceeds as follows:

"The court, in its opinion, held that in view of these constitutional provisions, the legislature had no power to declare or to contract that the moneys due the literary fund might be paid in coupons attached to the bonds authorized by the act of 1871, and that such a payment would be repugnant to the very nature of the fund. It might well be added that coupons thus paid into the fund would be of no value whatever to it, for as soon as paid into the treasury they would become as valueless as if cancelled and destroyed, unless some provision was made for their reissue and the putting of them into renewed circulation. This would be opposed to the whole tenor of the act, would be unjust to the coupon-holders themselves, and would probably be contrary to the acts of Congress in reference to the creation of paper money. We think that the position of the Court of Appeals in this case is well taken; that coupons could not be made receivable as a portion of the literary fund, and that if they could not be received as part of the fund they could not be made receivable for the taxes laid for the purpose of maintaining said fund. * * * In our judgment the law requiring the school tax to be paid in lawful money of the United States was a valid law, notwithstanding the provisions

of the act of 1871; and that it was sustained by the sections of the constitution referred to, which antedate the law of 1871, and override any provisions therein which are repugnant thereto."

. In *Hucless* v. *Childrey*, 135 U. S., p. 709, the Supreme Court of the United States held that sections 399, 536, and 538 of the Virginia Code of 1887, which forbid a treasurer to receive for a license tax for selling liquor by retail, coupons attached to bonds authorized by the act of 1871, were constitutional and valid.·

And yet the Supreme Court of the United States, in *McGalvey* v. *Virginia*, 135 U. S., at page 668, declared in October, 1889, that that court had determined in *Hartman* v. *Greenhow*, 102 U. S., 672, decided in 1881, and in *Antoni* v. *Greenhow*, 107 U. S., decided in March, 1883, and in the *Virginia Coupon Cases*, 114 U. S., 269, decided in April, 1885, and in all the cases on the subject that had come before that court for adjudication, and that "it may be laid down as undoubted law, that the lawful owner of any such coupons has the right to tender the same, after maturity, in absolute payment of *all* taxes, debts, dues, and demands due from him to the State."

However it may appear, it is a fact of record that the same court did, at the same October term, 1889, in the cases of *Hucless* v. *Childrey* and of *Vashon* v. *Greenhow*, hold that the lawful owner of such coupons has not the right to tender the same, after maturity, in absolute payment of either the tax imposed on a license to retail liquor, or the taxes imposed for the maintenance of the public free schools, and that the acts of the general assembly prohibiting the receipt of such coupons and requiring current money of the United States in payment of such taxes, are constitutional and valid.

The manifest inconsistency of the last two decisions named with the former decisions of that court, can only be explained on the theory that for the reasons set forth in the opinions of the court in *Hucless* v. *Childrey*, and in *Vashon* v. *Greenhow*,

the court, upon deliberate and mature consideration, determined to so far retrace its steps as to effect a most material *modification* of its former views, and to hold, as it did, that, although the act of 1871 is broad enough in its phraseology— that is the coupon feature of the act—to embrace all taxes, &c., yet maturer consideration had induced the conclusion that that act could not be held to embrace *all taxes*, &c., without a palpable violation of the constitution of Virginia, and that said act was at least repugnant *in part* to the 8th section of article 8 of that constitution, and to that extent, at least, unconstitutional and void.

It must be borne in mind that it is not to the repugnancy of the act of 1871, to the later acts of the general assembly forbidding the receipt of such coupons in payment of certain taxes, &c., but to the repugnancy of the coupon feature of the act of 1871 to the 8th section of article 8 of the constitution, that the Supreme Court ascribes the invalidity of the coupon feature of the act, which, the court remarks, is antedated by the said constitutional provision. Hence such invalidity, or the vice which tainted the whole coupon contract, existed from the inception of that contract, and was not superinduced by the subsequent acts of the general assembly. Hence the Supreme Court purposely, though with evident reluctance, modified its previous rulings, deliberately intended to do so, as is made manifest from what is stated on page 684, 135 U. S., where, after reviewing every case that had come before that court involving questions growing out of the act of 1871, Mr. Justice Bradley said : " Without committing ourselves to all that has been said, or *even to all that has been adjudged*, in the preceding cases that have come before the court on the subject, we think," &c. Mr. Justice Bradley, speaking apparently for the entire court, proceeds to render the opinion in the cases of *McGalvey* v. *Virginia* and seven other cases, the seventh being the case of *Hucless* v. *Childrey*, and the eighth being the case of *Vashon* v. *Greenhow*.

Now, we feel entirely safe in laying it down as an indisputable fact that it has been solemnly adjudged by the highest court in the land that the coupon feature of the act of 1871, so far as its validity was passed upon in *Hucless* v. *Childrey* and in *Vashon* v. *Greenhow,* was unconstitutional and void. The same is true of the act of 1879, because the same vice enters into and invalidates them both.

Such being an undeniable postulate, the next, and very material, question that arises is, what is *the effect* of the vice of illegality and consequent unconstitutionality as to part of an entire contract, whether by statute or otherwise; that is, as respects an entire contract, incapable of being apportioned? In other words, is it not a universally accepted principle of the law of contracts that an illegal element, or the vice of illegality entering into or constituting part of the promise, or consideration, of an *entire contract* renders the whole contract absolutely illegal and void? This question, upon principle and authority, can receive none other than an affirmative answer. No impartial mind can for a moment hesitate to pronounce the coupon contract an entirety and incapable of separation into parts, or of being construed as illegal and invalid as to part, and yet legal and valid as to the residue, for the simple legal reason that the bargain is one, the consideration is one, and the covenant is one, and the vice of illegality, in part, inhering in the coupon contract from its inception, the whole is void.

The coupon contract, as expressed on the face of each coupon, is that the coupons *shall* be receivable, after maturity, "for *all* taxes, debts, dues, and demands, due," &c.; and when any tax, of whatever character, is by judicial determination, or otherwise, exempted from the operation of the very terms of that contract, it can be for no other reason than that the contract is tainted with illegality, and is, therefore, wholly void; and such is necessarily the effect of the decisions of the Supreme Court in *Hucless* v. *Childrey* and in *Vashon* v. *Greenhow, supra.*

"The concurrent doctrine of the text books on the law of contracts is that if one of two considerations of a promise be void merely, the other will support the promise; but that if one of two considerations be UNLAWFUL the promise is void. When, however, for a legal consideration a party undertakes to do one or more acts, and some of them are unlawful, the contract is good for so much as is lawful, and void for the residue. Whenever the unlawful part of the contract can be separated from the rest it will be rejected, and the remainder established. But this cannot be done when one of two or more considerations is unlawful, whether the promise be to do one lawful act, or two or more acts, part of which are unlawful, because the WHOLE CONSIDERATION is the basis of the WHOLE PROMISE. The parts are inseparable." *Widoe* v. *Webb*, 20 Ohio St., 431, citing Metcalf on Contracts, 246; Addison on Contracts, 905; Chitty on Contracts, 730; 1 Parsons on Contracts, 456; 1 Parsons on Notes and Bills, 217; Story on Prom. Notes, § 190; Byles on Bills, 111; Chitty on Bills, 94.

And in the same case it is said: "Whilst a partial want or failure of consideration avoids a bill or note only *pro tanto*, *illegality in respect* to a part of the consideration avoids it IN TOTO. The reason of this distinction is said to be founded, partly at least, on grounds of public policy, and partly on the technical notion that the security is entire and cannot be apportioned; and it has been said with much force that where parties have woven a web of fraud or wrong, it is no part of the duty of courts of justice to unravel the threads and separate the sound from the unsound," citing Story on Prom. Notes and Byles on Bills, *supra*, and then adds: "And, in general, it makes no difference as to the effect whether the illegality be at common law or by statute."

In *Noyes' Ex'x* v. *Humphreys*, 11 Gratt., 636, this court fully recognized and applied the same doctrine. In that case N. rented property from T., who undertook to have certain improvements erected thereon, and he contracted with H. to do

the work. H. proceeded to do part of the work and received some payments from T.; but finding that T. was embarrassed, he stopped the work, and declared that he would proceed no further with it. N. then told H. to go on and finish the work and he would pay him. H. then went on and finished the work, and after it was done settled with T. and took his bond for the balance due him. T. being unable to pay him, H. sued N. for the whole balance due him for the work. Held: "That the promise alleged in the declaration being an entire promise to pay as well for that done before as that done after the promise, even if the promise would have been valid as to the work to be done, it was collateral as to that which had been executed, and being an entire promise, it is void as to the whole."

In that case Allen, P., in delivering the opinion of the court, used the following pertinent language: "The debt had been incurred, and though there may have been a sufficient consideration of benefit to the landlord in avoiding the loss of rents and the injury resulting from leaving the work in an unfinished state to have supported a promise to pay for the liability of Thompson, the promise would have been collateral, though on a good consideration, and must be in writing to be valid. But where the verbal promise is entire, and part of it relates to a matter which renders it necessary under the statute that the promise should be in writing, the whole promise is void. Being entire and part of it void, the whole is defective."

In the light of the case last referred to, there can be no question as to the applicability of the same principle to the present case. Here the undertaking, expressed on the face of the coupon, was that it should be receivable, at and after maturity, "for *all* taxes, debts, dues, and demands due the State," but this court and the Supreme Court of the United States have solemnly declared, in *Vashon* v. *Greenhow, supra,* that "the legislature had no power to declare or contract that moneys due to the literary fund might be paid in coupons at-

tached to the bonds authorized by the act of 1871." It being, then, an undeniable fact that the coupon contract is an *entire* contract, it therefore follows, *ex necessitati*, that the whole promise is illegal and void.

In *DeBeerski* v *Paige*, 36 N. Y. R., 537, Davies, Ch. J., said: "It is well settled if part of an entire contract be void under the statute of frauds the whole is void; that the party shall not be permitted to separate the parts of an entire agreement and recover on one part, the other being void," citing *Chater* v. *Becket*, 7 Tenn., 197; *Crawford* v. *Murrall*, 8 John., 253. And in the same case it is said: "When a note is given in payment of an account, some of the items of which are legal and some illegal, although an action would lie for so much of the account as is made up of lawful items, the note itself is entirely void. That the plaintiff cannot recover on the note to the extent of the lawful items, although they are distinctly severable from the unlawful."

In *Thayer* v. *Rock*, 13 Wend., 53, a contract had been made as well for the sale of real as of personal property, which was entire, founded upon one and the same consideration, and the same not being reduced to writing, it was held that it was void, as well in respect to the personal as the real property. In that case Ch. J. Savage said: "The action in this case was brought to enforce that part of the contract which, if it had stood alone, would have been good, but being a part of an entire contract, embracing another subject, in respect to which it was void, the whole was void. The contract was to sell the mill site and privileges, and also the wood and timber, and was an entire contract, entered into for one and the same consideration; the two subjects cannot be separated, and being void in part is totally void.

So in the present case the contract was that the coupons should be receivable, at and after maturity, for *all* taxes, debts, dues, and demands due the State, which is an entire contract, but the petitioner below, the defendant in error here, seeks to

separate the good from the bad and to recover upon the averment that the coupons tendered by him were tendered in payment of taxes due by him, "other than school tax, and not liquor license tax." He cannot in this way be permitted to separate into parts an entire contract and recover on the parts supposed to be good, the others being void. In other words, he seeks to recover upon a contract which does not exist.

In *Craig* v. *State of Missouri*, 4 Peters, at page 436, Ch. J. Marshall, speaking for the Supreme Court, said: "The certificate for which this note was given being in truth 'bills of credit,' in the sense of the constitution, we are brought to the inquiry: Is the note valid of which they form the consideration? It has been long settled that a promise made in consideration of an act which is forbidden by law is void." It will not be questioned that an act forbidden by the constitution of the United States, which is the supreme law, is against law, so, in the present case, the promise, written on the face of the coupon, is forbidden by the constitution of Virginia, the supreme law of the State, and subordinate only to the federal constitution and laws made in pursuance thereof, and being tainted with illegality in part is void in toto.

In *Thompson* v. *Collins*, 4 Head (Tenn.), 441, the court said: "A containing on its face this or any other illegal stipulation cannot be enforced in a court of law or equity. No court will give its active aid upon such a contract."

In the case of *Filson's Trustee* v. *Himes*, 5 Pr. St., 452, Chief Justice Gibson concludes an able and instructive opinion in this language: "But in those cases distinct bargains were put in the same note; in this the bargain is one, the consideration is one, and the covenant is one, and all is void."

Cases holding the same doctrine might be multiplied almost without end; but it cannot be necessary to cite more cases in support of a principle universally accepted as the law in respect to entire contracts containing the vice of illegality in part.

Inasmuch, therefore, as the coupon feature of the funding

act of 1871, which is simply an incident to the main purpose of the act, and readily separable therefrom, and inasmuch as said coupon feature constituted a contract which is undeniably an entire contract and incapable of being separated into parts, and inasmuch as it has been declared by the highest court in the land that that contract is tainted in part with the vice of illegality, it necessarily follows that, in the light of the authorities cited above, the whole coupon contract, or covenant, is absolutely illegal and void. This, it seems to us, is clearly and necessarily the effect of the decisions of the Supreme Court of the United States in the cases of *Hucless* v. *Childrey* and *Vashon* v. *Greenhow, supra.*

The legislature undertook to make the coupons receivable for *all taxes*, &c. But the Supreme Court, in *Vashon* v. *Greenhow*, says this legislature had no power to do this. Why not? Simply because it was directly opposed to the aforesaid provisions of the State constitution with respect to the maintenance and support of the public free schools, and was, therefore, illegal and void. It cannot be pretended for a moment that the sacredness of the school fund depended upon the legislative act setting it apart, as required by the State constitution. The Supreme Court did not so decide, but, going back to the inception of the coupon contract, the illegal act of the legislature, declared that the legislature was without power and authority to do the act in question.

It should be remembered that it was the first legislature of Virginia after her restoration to statehood that passed the funding act of 1871. It was the bounden duty of that body to set apart and protect the school fund which had been solemnly dedicated by the constitution for the benefit of all the people of the commonwealth; but instead of performing the duty thus imposed, that body neglected to do so, and undertook to pledge that fund, with all other taxes, to the payment of coupons. No act more flagrantly illegal was ever perpetrated by any legislative body. The result points to the motive. It is

as well understood as any historical fact of the times, though not as readily susceptible of complete proof, that the funding act of 1871 was a huge fraud palmed upon the State in her poverty and distress. We are fully sensible of the fact that these things ordinarily should find no place in judicial opinions, but, as a part of the history of this long vexed subject, they may serve somewhat the purpose of vindicating the old commonwealth from the many aspersions attempted to be cast upon her good name. The people of Virginia have only sought protection from what they feel to be a great fraud and oppression. Had the State done less she would have rendered herself unworthy of her past history.

In concluding his opinion in *Vashon* v. *Greenhow*, Mr. Justice Bradley remarked: " It is certainly to be wished that some arrangement may be adopted which will be satisfactory to all the parties concerned, and relieve the courts as well as the commonwealth of Virginia, whose name and history recall so many interesting associations, from all further exhibitions of a controversy that has become a vexation and a regret." This remark is worthy alike of the man and the judge. The generous wish has been accomplished, except as to the little squad of coupon holders who continue to vex the commonwealth; and, whatever may be said to the contrary, the recent settlement of the State debt is due exclusively to the influence of the decisions of the Supreme Court in *Hucless* v. *Childrey* and in *Vashon* v. *Greenhow*, *supra*. In view of those decisions, and being entirely satisfied that the coupon feature of the act of 1871, which is distinct and separable from the main feature of the act, is tainted with the vice of illegality, which renders the whole coupon contract illegal and void, we take, in view of said Supreme Court decisions, the one additional and necessary step, and declare the whole coupon contract absolutely illegal and void. This leaves the bond and coupon-holders to accept the terms of the recent settlement or to pursue the ordinary remedies for the collection of their principal and interest;

and by either mode they will get more than they are in good conscience entitled to. For these reasons we reverse and annul the judgments respectively in each of the above-named cases.

LEWIS, P., dissented.

JUDGMENT REVERSED.