Statement.

# Wytheville.

MARTIN'S ADMINISTRATOR V. RICHMOND; FREDERICKSBURG & PO-
TOMAC RAILROAD CO.

June 11, 1903.

Absent, Keith, P., and Cardwell, J.

1. EVIDENCE—*Examination of Witnesses—Impeachment—Rehabilitation—
Time of Examination.*—After a witness has been cross-examined
touching a prior statement made by him, and a foundation laid for
his impeachment, the party calling him may re-examine him touch-
ing the same matter, and this is the natural and proper time and
manner to elicit his statement touching the prior inconsistent state-
ment. If impeaching evidence is thereafter introduced, the party
introducing the witness may, under the strictest rules governing
the introduction of evidence, support the witness by proper evi-
dence for that purpose.

2. APPEAL AND ERROR—*Judgment by Trial Court Without a Jury—Rule
of Decision on Appeal.*—When a case at law is decided by the court,
without the intervention of a jury, and the judgment is excepted
to because contrary to the evidence, and the evidence, and not the
facts, is certified, the rule of decision in the appellate court is to
give the judgment of the trial court the same effect as the verdict
of a jury. The judgment will not be disturbed, unless it is con-
trary to the evidence, or the evidence is plainly insufficient to sup-
port it. If the evidence is conflicting on material points, the judg-
ment will be affirmed.

Error to a judgment of the Circuit Court of Stafford county,
rendered May 5, 1902, in an action of trespass on the case,
wherein the plaintiff in error was the plaintiff, and the defend-
ant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Wm. D. Carter* and *A. T. Embrey,* for the plaintiff in error.

*Leake & Carter* and *St. George R. Fitzhugh,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Upon the first trial of this cause there was a verdict in favor of the plaintiff, which was set aside upon motion of the defendant, and a new trial granted. Upon the second trial, all matters of law and fact having been submitted to the court, it gave judgment for the defendant. To that judgment this writ of error was awarded.

The action of the court setting aside the verdict of the jury upon the first trial is assigned as error.

One of the material questions in the case was whether or not the defendant's train gave any warning of its approach to the public crossing where it ran into the vehicle in which the plaintiff's intestate was riding, and caused the injuries complained of. The plaintiff had introduced evidence which tended strongly to prove that no such warning had been given. The defendant, in sustaining that issue on its part, introduced a witness who testified positively that such warning was given. Upon the cross-examination of the witness the foundation was laid for his impeachment by showing that he had stated at the time of the accident that no warning was given, and in rebuttal the plaintiff introduced a witness who testified to such contradictory statement. After the plaintiff had closed his evidence, the defendant introduced a witness to contradict the plaintiff's witness on this point, but the court, upon the plaintiff's objection, refused to permit the witness to testify.

The rejected evidence was clearly admissible, and the court erred in not receiving it, unless, as the plaintiff insists, the time

and circumstances under which it was offered justified the court in rejecting it. The bill of exceptions taken upon the court's refusal to receive the evidence discloses fully the circumstances under which the evidence was offered and rejected, and is as follows:

"Be it remembered that during the trial of this case Jesse Stone, Sr., was called as a witness for the defence, and among other things testified as follows on cross-examination by plaintiff:

" 'Q. Did you see Mr. Jett there—John Jett?'

" 'A. I don't remember whether I did or not.'

" 'Q. He testified that he saw you there.'

" 'A. Well, he might have seen me some time after the accident happened, but he was not there when the accident happened.'

" 'Q. Did you have any conversation with him, Mr. Stone?'

" 'A. I do not remember.'

" 'Q. When he run up, didn't he say to you, "Mr. Stone, what's the matter?'

" 'A. He might have done it. I don't remember.'

" 'Q. And did you or not reply that the Martins were killed by the train that run up on them and did not give them any warning?'

" 'A. No, sir.'

" 'Q. You didn't say that to John Jett?'

" 'A. No, sir; I didn't. I could not have said that after hearing that whistle.' "

"Re-Direct Examination.

"By counsel for defendant:

" 'Q. If Mr. Jett should state that you made any such remarks to him, would it be the truth or a lie?'

" 'A. It would be an untruth, because I did not make it. And, more than that, here is my boy here present, who was

right there with me at the time—right by my side the whole time. I am not interested in this case at all. I am just here to tell what I know about it.' "

"Conway Chichester, a witness for the plaintiff, after the defendant had completed its testimony in chief, was called again in rebuttal, and, having finished his evidence in rebuttal, he was questioned as follows:

" 'Q. Do you know the condition that crossing was in before this accident—I mean as to the road?'

"Whereupon defendant objects to this question and answer, because it was not evidence in rebuttal, but evidence in chief, this ground having been gone over by the plaintiff in his testimony in chief. The court sustained the objection, remarking that the practice had grown so loose as to the time and order in which testimony could be introduced that it was hard to draw the line, and, for itself, would be glad to go back to the strict common-law rule, which was well understood and well defined; that, since the point had been raised, the court would adopt in this trial the strict rule, and apply it to each side. The plaintiff then introduced no further testimony.

"Whereupon the defendant introduced as a witness Jesse Stone, Jr., who was with his father (Jesse Stone, Sr.) on the day and at the scene of the accident when Mrs. Martin, the plaintiff's intestate, was killed, and who had been regularly summoned as a witness, and had been in attendance at the trial, but up to this time had not been put on the stand; the said Stone, Jr., being now called to prove that Stone, Sr., did not say at the scene of the accident to John Jett (as testified by Jett) that the railroad company had killed Mrs. Martin without giving any warning, the said John Jett having previously testified as follows on this head, viz.:

" 'Q. You testified yesterday, did you not, that you were at the scene of the accident a short while afterwards?'

" 'A. Yes, a short while.'

" 'Did you or not see Mr. Jesse Stone there, who also testified?'

" 'A. I did, and talked with him.'

" 'Q. What did he say, Mr. Jett?'

" 'A. Well, the word I replied to him, I said, "How in the world did this thing happen?" "Well," he said, "they didn't give any alarm coming down by that whistle board." He repeated those words to me.'

" 'Q. He told you that a few minutes after the accident?'

" 'A. Yes, sir.'

" 'Q. That who did not give—the company?'

" 'A. That the train did not give any alarm coming down at the cut there—the whistle post.'

" 'Q. Are you sure of that?'

" 'A. Yes, sir.'

"The plaintiff objected to the introduction of said Stone, Jr., because this evidence was not strictly in rebuttal, because the defendant had asked Stone, Sr., during his examination in chief, and before Jett had testified, if Jett should make any such statement would it be the truth or a lie, and the said Stone, Sr., had stated in reply that it would be an untruth; and because Jett had been examined by the plaintiff on this point to rebut this denial of Stone, Sr.

"The court sustained the objection of the plaintiff, and refused to admit the testimony of Stone, Jr., to which ruling of the court the defendant excepted, and tenders this, his bill of exception, and asks that the same be sealed, signed and enrolled; which is accordingly done."

The contention of the plaintiff is that the court was justified in rejecting the evidence of Stone, Jr., under the strict rules of evidence which it was applying upon the defendant's motion as to the order in which the testimony should be introduced, since the defendant had, in its evidence in chief, gone into the question upon which it sought to introduce Stone, Jr., in rebuttal.

This contention is not sustained by the facts. The defendant, in its evidence in chief, had introduced no testimony to sustain the witness (Stone, Sr.), whom the plaintiff sought to impeach. Upon re-direct examination it inquired further into the alleged ·contradictory statements made by him. This it clearly had the right to do. The process of explaining away discrediting evidence belongs naturally in the re-examination. The same principle applies to a discrediting by prior inconsistent statements; after a witness has been cross-examined respecting a former statement made by him, the party who called him has the right to re-examine him as to the same matter. 1 Greenleaf on Ev. (16th ed.), sections 467, 466a. Under the strictest rules as to the order in which testimony ought to be introduced, the evidence of Stone, Jr., was clearly admissible. Not only was it admissible, but it was very material. It tended to sustain the defendant's contention on one of the vital issues in the case, and, the court having erred in excluding it, such erroneous ruling was good ground for setting aside the verdict of the jury and granting a new trial.

This brings us to the consideration of the errors assigned to the action of the court upon the second trial. Upon that trial all matters of law and fact were submitted to the court for its decision and judgment. No exceptions were taken to the court's action upon that trial except to its ·judgment in favor of the defendant which was asked to be set aside upon the ground that it was contrary to the law and the evidence. The only question, therefore, which arises upon the last trial is whether or not, considering the case as on a demurrer to the evidence (Code 1887, sec. 3484), the judgment of the court was contrary to the evidence, or the evidence was plainly insufficient to support it; for when a case at law is decided by the court without the intervention of a jury, and a party excepts to the decision on the ground that it is contrary to the evidence, and the evidence, not the facts, is certified, as in this case, the rule of

decision in the appellate court is to give the judgment of the trial court upon the evidence the same effect as if it were the verdict of a jury.

The case made by the plaintiff's witnesses, briefly stated, was that on the morning of the accident, which was in July, 1901, his intestate, with three of her children and a colored boy, were on their way to church, travelling in a two-horse Dayton wagon; that when near the crossing, and just before they reached the side track, they stopped, and all looked up and down the track as well as they could, and listened for the train, and neither saw nor heard it; that they then started forward, looking up and down the track, when they saw the train approaching. At this time the horses to the vehicle were about the middle of the main track, and the train, which was running about sixty miles an hour, struck the rear part of the wagon, causing the death of the intestate and her two daughters, all of whom were sitting on the rear seat; that the crossing was out of repair, not filled up between the rails; that near the crossing were two mounds covered with weeds and bushes, and a tree not far from the track, which obscured the view in the direction from which the train came; that no whistle was blown or warning given until the cattle alarm was sounded, which was after the horses had gotten on the main track.

The case in brief made by the defendant's witnesses was that its train which caused the injuries complained of was a newspaper train, running a few minutes late, at fifty-five to fifty-seven miles an hour, which was about the speed fixed by schedule; that in the direction from which the train came the track is straight for more than 3,000 feet, as to which there was an unobstructed view; that neither the mound nor the tree referred to in the plaintiff's evidence interfered with the view; that the whistle for the crossing was blown forty or fifty feet before the train reached the whistle post, over 1,250 feet from the crossing; that the train was within 100 yards of the cross-

ing when the horses went upon the track, too late to stop the train; that, as soon as they were seen upon the track the whistle was blown, the bell rung, and the emergency brake applied.

From this brief statement of the case it will be seen that the evidence was conflicting on every material question.

The evidence of the defendant, if true (and that was a question for the jury—or the court in this case), was clearly sufficient to show that the defendant was not guilty of negligence in the management of its train, or, if negligent, to show that the plaintiff's intestate' was guilty of contributory negligence.

We are of opinion that the judgment of the Circuit Court should be affirmed.

*Affirmed.*