## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

PARSONS v. MAURY & MAURY.

June 11, 1903.

1. APPEAL AND ERROR—*Decision by Court Without Jury—Rule of Decision—Case at Bar—Enforcement of Coupons—Compensation as Attorneys.*—This case being heard in this court as upon a demurrer to the evidence by the plaintiff in error, the judgment of the trial court must be affirmed if there is any evidence in the record on which the judgment could have been based. The controversy grows out of the employment of the defendants in error to enforce the collection of coupons from a large amount of Virginia bonds. The evidence shows that the defendants in error were not mere brokers with respect to the coupons, but were also engaged as attorneys in an arduous task which tested the resources of the most alert, diligent, successful, and learned lawyers, and that their compensation was not limited to the commission agreed to be paid them upon coupons actually sold and delivered.

Error to a judgment of the Circuit Court of the city of Richmond, rendered November 27, 1901, in an action of assumpsit, wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

The opinion states the case.

*Williams, Bryan & Williams*, for the plaintiff in error.

*Charles S. Stringfellow* and *Christian & Christian*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Edwin Parsons sued Maury & Maury in assumpsit in the Circuit Court of the city of Richmond; defendants pleaded the general issue and set-off; and, the whole matter of law and fact having been submitted to the court without the intervention of a jury, a judgment was entered for the defendants, which is now before us for review.

This litigation grows out of a controversy between the State of Virginia and the holders of her bonds issued under an act passed in 1871, bearing coupons receivable in payment of all taxes due the State. A large block of these bonds was held by Edwin Parsons, deceased, under whom Edwin Parsons, the plaintiff in error, claims as assignee.

The people of Virginia were firmly convinced that a great wrong had been perpetrated upon them by the act of 1871. They were satisfied that under its provisions a debt far in excess of what they ought to pay had been assumed, and that a tax sufficient to meet the interest upon the debt as fixed by that act, and to discharge the absolutely essential functions of government, would be oppressive and ruinous. There was a strong impression also that many forged and spurious bonds were in existence, the coupons from which were being foisted upon her tax collectors. Whether these opinions and convictions were well founded or not, it is now idle to inquire. They were so universally entertained that the Legislature of the State passed laws forbidding the reception of coupons by tax collectors, and from time to time passed other acts to enforce the policy of the State in this respect, and to hinder and embarrass in every possible way the forcing of tax-receivable coupons into the treasury of the State, in payment of taxes, debts, and demands, instead of current money. These efforts upon the part of the State were met upon the part of her creditors by suits in the State and Federal courts, many of which found their way to the Court of Appeals of the State and the Supreme Court of the United States. The contest

went on for years. Every success upon the part of the coupon-
holder before the courts was met and checked by some new act
which would for the time at least serve to delay the creditor.
Finally the Court of Appeals of Virginia, at the March term,
1894, in the case of *Commonwealth* v. *McCullough*, reported in
90 Va. 597, 19 S. E. 114, held that the acts of March 30, 1871,
and March 28, 1879, under which bonds were issued, having
coupons thereto attached, receivable at and after maturity for
debts, dues, and demands due the State, were wholly unconsti-
tutional and void. From this decision an appeal was taken to
the Supreme Court of the United States, where it was finally
decided December 5, 1898 *(McCullough* v. *Virginia,* 172 U. S.
102, 19 Sup. Ct. 134), the Court of Appeals of Virginia being
reversed. Justice Brewer, who delivered the opinion, says:

"Perhaps no litigation has been more severely contested, or
has presented more intricate and troublesome questions, than
that which has arisen under the coupon legislation of Virginia.
That legislation has been prolific of many cases, both in the
State and Federal courts, not a few of which finally came to
this court." Then follows a list of fifteen cases, illustrative of
various questions arising under the coupon legislation of the
State, which found their way to the Supreme Court. The
cases in the State courts and inferior federal tribunals were
almost without limit.

Edwin Parsons, deceased, as we have seen, was the owner of
a large number of coupon bonds. He determined to compel
the State to carry out her contract with him. In order to do so
it was necessary that he should first find a market for his cou-
pons, that is to say, a Virginia tax-payer who would buy his
coupons and then enter into litigation with the State to compel
their reception in accordance with the contract. To this end
he employed the firm of Maury & Maury. His bargain with
them was that they were to take the coupons, place them with
tax-payers, and account to him for 50 cents on the dollar of

the face value of the coupons, and all over and above which the
Maurys were able to realize to be retained as compensation for
their services.   The tax-payer, of course, required a consider-
able reduction from the face value of the coupons in order to
induce him to pay taxes in coupons rather than in money, and
it was the duty of the Maurys also to conduct whatever litiga-
tion was necessary in order to compel the tax-gatherers of the
State to receive the coupons, and to protect the tax-payer from
the consequences of his efforts to compel their reception.   The
relation between the Maurys and Parsons continued during
many years, and down to the death of Edwin Parsons, which
occurred in August, 1895.   This was after the decision of the
Supreme Court of the State in *Commonwealth* v. *McCullough*,
and before its reversal by the Supreme Court of the United
States.   Between those periods the use of the coupons in pay-
ment of taxes had entirely ceased.   During the pendency of
the litigation to which we have referred, efforts were being
made for a settlement of the differences between the State and
her creditors, which culminated in the act of February 20,
1892, under which almost the whole of the outstanding debt
was refunded.   Edwin Parsons was not inclined to accept the
settlement proposed.   He determined to keep up the fight,
and instructed his attorneys to that effect, and up to the time
of his death adhered to this resolution.   The correspondence
printed in the record shows that he was keenly alive to the
whole situation, that he was incensed by the course pursued by
the State, and resolute to enforce his rights through the courts;
and that he felt a special interest in securing the reversal of
the case of *McCullough* v. *Commonwealth*.   After his death
his administrators gave instructions to the same effect, but
afterwards determined to withdraw the bonds from the hands
of Maury & Maury, and to fund them under the act of Feb-
ruary 20, 1892.   In February, 1896, Maury & Maury had in
their possession $59,000 of coupons, $45,000 of which had al-

ready been tendered in payment of taxes. With respect to those coupons there is no controversy. They also had in their possession bonds belonging to Parsons, upon which there were matured coupons amounting to $60,642. These coupons had not been detached. These bonds had been placed with Maury & Maury under their contract with Edwin Parsons, deceased, with authority to detach the coupons as they matured, and take necessary steps to realize upon them by having them tendered in payment of taxes. The bonds with these coupons attached were returned to the administrator of Edwin Parsons, deceased, in accordance with their demand, the Maurys reserving all their rights under their contract with respect to them. In addition to the $60,642 of coupons which had matured at the time they were delivered up by the Maurys, six semi-annual instalments of 3 per cent. coupons accrued while the *McCullough Case* was pending in the Supreme Court of the United States—$40,428—which, added to the $60,642, made a total of $101,070 of coupons withdrawn from the hands of Maury & Maury.

The declaration of the plaintiff claims that there was due on the 14th of March, 1896, the sum of $28,909.50 for coupons sold by the defendants and unaccounted for. The offset filed by Maury & Maury is as follows:

"Amount due and owing to the said defendants on account of profits and compensation to which they are entitled, and which they would have realized under and by virtue of an agreement made between the said defendants and Edwin Parsons (deceased) in his lifetime, in respect to $224,600, face value of consol bonds of the State issued under the act of Assembly of the State, approved March 30, 1871, and coupons belonging to said consol bonds, which bonds and coupons were placed in the hands of the said defendants by the said Edwin Parsons, deceased, in his lifetime, and afterwards wrongfully withdrawn from the hands of the said defendants by the admin-

istrators of the said Edwin Parsons (deceased); and for fees and compensation to which the said defendants are entitled for legal services in sundry matters, and especially for obtaining a writ of error from the Supreme Court of the United States to the Supreme Court of Appeals of Virginia in the case of McCullough against the State of Virginia, and securing a reversal of the judgment of the said Court of Appeals of Virginia in the said case, together with interest at the rate of six *per cent.* (6 *per cent.*) *per annum,* from the 15th day of January, 1899, until payment, $50,000."

And the judgment of the court is in the following terms: "This day came again the parties, plaintiff and defendants, by their attorneys, and both parties waiving a jury, and agreeing that the whole matters of law and fact arising in this cause should be submitted to and determined by the court, and the court having maturely considered all of the evidence adduced and the argument of counsel, and being of opinion that the offsets proved by the said defendants are at least equal in amount to the claim of the said plaintiff, and the said defendants expressly waiving any claim for judgment in their favor for any excess of their offsets over and above, it is considered by the court, upon the issues joined, that the plaintiff take nothing by his bill, and that the defendants go thereof without day, and recover against the said plaintiff their costs in this behalf expended."

This judgment stands before us as upon a demurrer to the evidence, under section 3484 of the Code, by virtue of which "the party demurring is considered as admitting his adversary's evidence, and all just inferences which can be properly drawn therefrom by a jury, and as waiving all of his own evidence which conflicts with that of his adversary, and all inferences from his own evidence (although not in conflict with his adversary's) which do not necessarily result therefrom. *Johnson's Adm'r* v. *Chesapeake & O. Ry. Co.*, 91 Va. 171, 21 S. E. 238.                    VOL. CI—66

Applying this rule of decision to the decision before us, the judgment must be affirmed. Maury & Maury were not, as plaintiff in error contends, mere brokers with respect to these coupons. They were that and more. They were attorneys engaged in an arduous and difficult task which tested the resources of the most alert, diligent, successful, and learned lawyers. They were required to combat all the resources which a State can wield, backed by an unyielding and well-nigh unanimous public opinion. When they entered into the service of Parsons, we gather from the voluminous correspondence in the record that it was not to collect this or that coupon, not to conduct this or that suit, but that it was mutually understood that they were engaged to enter upon a long, difficult, harassing, and systematic effort to compel the State to receive in payment of taxes coupons upon bonds which had many years to run, which bonds were confided to defendants in error, the coupons to be detached and used as they deemed most wise and judicious. It is not pretended that they did not render faithful and efficient service. The duties imposed were onerous and exacting, and must indeed have engaged almost their exclusive attention.

Without undertaking to discuss in detail the evidence presented in the record, we cannot say that the judgment is without evidence, or so manifestly contrary to the weight of evidence as to require its reversal.

The judgment of the Circuit Court is affirmed.

*Affirmed.*