# Wytheville.

Delaware, Lackawanna and Western Railroad Co. v. Cotten.

June 13, 1912.

Absent, Cardwell, J.

1. Appeal and Error—*Judgment by Court Without Jury—Effect.*—Where a case is heard by the judge without a jury, and the evidence is certified, it will be heard in this court as on a demurrer to the evidence by the plaintiff in error. The judgment of the trial court has the same effect as the verdict of a jury, and this court will not disturb its finding unless it is plainly against the evidence, or without evidence.

2. Appeal and Error—*Objections to Evidence—Correct Judgment.*—Where exceptions have been taken to the admission of evidence in the trial court, but that unexcepted to is amply sufficient to sustain the judgment, the judgment will not be disturbed, as the evidence objected to could not have affected the result.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of *assumpsit.* Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Williams & Tunstall,* for the plaintiff in error.

*J. W. Willcox* and *Morris, Garnett & Cotten,* for the defendant in error.

Harrison, J., delivered the opinion of the court.

This record shows that in August, 1908, the Delaware, Lackawanna and Western Railroad Company entered into a contract in writing with the Henderson Jarrett Co., Inc., of Norfolk, dealers in lumber, at Norfolk, Virginia, by which it was agreed

that the lumber company would deliver to the railroad company, at Scranton, Pa., one hundred cars of "pine collar timber," not peeled, to be not less than eighteen feet long, and 30 *per cent.* thereof to be ten inches in diameter, 30 *per cent.* twelve inches, 30 *per cent.* fourteen inches, and 10 *per cent.* sixteen inches, at the price of 13¼ cents per lineal foot. The contract further provided that should the material furnished fail to comply with the specifications, the railroad might return the same at the expense, including freight charges, cost of handling, etc., of the shipper. This pine collar timber was commonly known and designated as "mine props." The lumber company proceeded to fill the order, completing the same by October 27, 1908. As the lumber was delivered the railroad company distributed the same to its various mines in the outlying district around Scranton, where the greater part thereof was promptly used. When the parties came to a final settlement of the balance due the lumber company under the contract, differences arose as to the size of the props and the method of calculating the balance due. The railroad company insisted that the lumber company had not delivered as many props of the larger sizes as the contract called for, and further contended that in ascertaining the diameter of the logs a deduction of one inch should be made for the bark, notwithstanding the provision of the contract that the material to be furnished should be *unpeeled;* and, further, that when a log measured under the bark fifteen, thirteen, or eleven inches it was to be put in the next lower class, since the contract did not call for props of that size. In other words, if a log actually measured fourteen inches, including the bark, one inch was deducted for the bark, thus reducing the diameter to thirteen inches, and then the log was to be put in the twelve inch class, because the contract did not contemplate a log thirteen inches in diameter. This method of measurement made a very large difference in the diameter of the logs, and was repudiated by the lumber company as arbitrary, and in utter disregard of the contract.

Various attempts were made to bring about a settlement of these differences, and in the spring of 1909 a final conference was had, which resulted, as was supposed, in a satisfactory adjustment. At this conference it appears to have been agreed that there should

be added one inch to all the measurements, representing the difference between an over-bark and an under-bark measurement; that, when this had been done, the logs which, by proper measurement, fell into the intermediate grades, not named in the contract, should be divided equally, and one-half assigned to the next highest grade and one-half to the next lowest grade; and, this having been done, that the value should be reckoned according to a scale agreed upon. The parties reached totally different results in the calculation by each of the balance due under this compromise adjustment.

The evidence for the plaintiff shows very clearly and satisfactorily that, by proper calculations, such as were contemplated by the terms of the adjustment, there was a large balance due to the lumber company. The result of the calculation made by the railroad company was a trifling balance due, which it tendered the plaintiff in full discharge of its obligation. This tender was rejected, upon the ground that it had been arrived at in total disregard of the terms of adjustment which had been adopted. Thereupon, Preston S. Cotten, the assignee of the lumber company, brought this suit to recover of the defendant railroad company the sum of $8,098.04, the balance originally claimed and demanded by the lumber company as its due.

The case was heard by the judge of the circuit court of the city of Norfolk without a jury, who gave the plaintiff a judgment for $4,159.60, to which the present writ of error was awarded on the petition of the defendant railroad company.

The case having been heard by the judge without a jury, and the evidence being certified, it is to be heard here as on a demurrer by the defendant to the evidence. The judgment of the trial court has the same effect as the verdict of a jury, and this court will not disturb its finding unless it is plainly against the evidence, or without evidence. *Martin* v. *Railroad Co.*, 101 Va. 406, 44 S. E. 695; *Parsons* v. *Maury*, 101 Va. 516, 44 S. E. 758; *Gray* v. *Rumrill*, 101 Va. 507, 44 S. E. 697.

We have examined carefully the evidence, which is too voluminous to be discussed in detail, and find that it abundantly sustains the findings and judgment of the circuit court. Viewed from the standpoint of a demurrer to the evidence, the judgment is not only amply sustained, but is fully justified.

Several objections were taken by the defendant to the action of the court in admitting and rejecting certain evidence. In the view we take of the case, it is unnecessary to consider these exceptions, for the reason that, if they were well taken, it could not affect the result. The evidence other than that involved in these objections is amply sufficient to sustain the judgment, and, therefore, the testimony objected to could not possibly have had any influence on the mind of the court prejudicial to the objecting party. *Gerst* v. *Jones & Co.*, 32 Gratt. (73 Va.) 518, 34 Am. Rep. 773.

The judgment complained of must be affirmed.

*Affirmed.*