## DAVIS, DIRECTOR GENERAL, ETC., *v.* STEELE.

[No. 11,874.   Filed February 4, 1925.   Rehearing denied April 28, 1925.   Transfer denied June 12, 1925.]

1. EVIDENCE.—*Rules of interstate carrier as to demurrage charges presumed to have been filed with Interstate Commerce Commission and duly published.*—Rules of interstate carrier as to demurrage charges for not promptly unloading cars delivered to consignee presumed to have been filed with Interstate Commerce Commission and to have been published as required by law.   p. 304.

2. CARRIERS.—*Demurrage rules extending "free" time for weather conditions not applicable to delay in unloading caused by consignee's inability to receive shipment.*—Demurrage rules issued by a carrier which provided that when weather conditions made it impossible to unload freight without serious injury, the "free" time should be extended, were not applicable to a case of delay in unloading a car of oil for use on the streets of a city, where the delay was occasioned, not by the weather conditions, but by the fact that the consignee was not prepared to receive and unload it.   p. 304.

3. APPEAL.—*Court will search the record to affirm and should affirm on proposition leading to affirmance though not mentioned in appellee's brief.*—An appellate tribunal will not search the record to reverse a judgment, but will to affirm it, and when, before decision, its attention has been called to a proposition that will lead to an affirmance, it becomes its duty to affirm, though nothing is said in appellee's brief concerning it.   p. 305.

4. CARRIERS.—*Party sued for demurrage charges who relies on an exception to rules to the effect that private cars on private tracks were not subject to demurrage charges has burden of pleading and proving facts to bring him within exception.*— In a carrier's action for demurrage charges for not promptly unloading a car-load of freight, the consignee has the burden of alleging and proving the facts necessary to bring him within an exception to the carrier's rules to the effect that private cars on private tracks were not subject to demurrage charges. p. 305.

From Gibson Circuit Court; *Robert C. Baltzell,* Judge.

Action by James C. Davis, Director General of Railroads against Charles A. Steele. From a judgment for defendant, the plaintiff appeals. *Reversed.* By the second division.

*Alex P. Humphrey, Edward P. Humphrey, John D. Welman, Morton C. Embree* and *Lucius C. Embree,* for appellant.

*Claude A. Smith* and *T. Morton McDonald,* for appellee.

McMAHAN, J.—Complaint by appellant to recover demurrage on a car of oil shipped in interstate commerce to appellee at Oakland City, Indiana, and which had been detained by appellee at Oakland City on the tracks of the Southern Railway from April 29, 1919, to May 26, 1919.

The undisputed evidence shows that appellee had entered into an oral contract with the municipal authorities of Oakland City to oil the streets of that city. The oil was to be put on the streets in good condition, in good weather, when the streets were not muddy and when it was not raining. The superintendent of streets was to determine and decide when the weather was fit for the placing of the oil on the streets. A tank-car loaded with oil was shipped to appellee at Oakland City from a point in Illinois. This car arrived at Oakland City on the morning of April 29, 1919, and was placed for unloading at 9 a. m. of said day. Appellee received notice at 11 a. m. of said day of the arrival of the car and that it had been placed for unloading. It was not unloaded until May 26, 1919, at 6 p. m.

The demurrage rules of appellant allowed forty-eight hours free time beginning at 7 a. m. the day after notice for unloading had been given. The rules provided

that demurrage charges after the expiration of the forty-eight hours free time should be as follows: For each of the first four days three dollars, for each of the next three days six dollars and for each succeeding day ten dollars. Another rule provided that, "When the condition of the weather during the prescribed free time is such as to make it impossible to employ men or teams in loading or unloading, or impossible to place freight in cars, or to move it from cars, without serious injury to the freight, the free time shall be extended until a total of 48 hours free from such weather interference shall have been allowed."

The rain fall during the time the car of oil was on the track for unloading, expressed in inches, was as follows: April 29, .52; April 30, 1.06; May 1, 1.05; May 5, .45; May 7, .61; May 8, .37; May 16, .19; May 19 to May 25, from .06 to .96 inches. No rain fell May 2, 4, 9, 11, 12, 13, 14, 17, and 18. On May 3, 6, 10, and 15 there was a bare trace. This evidence as to rainfall related to the city of Princeton which is twelve miles west of Oakland City. There were no storage tanks at Oakland City for the storage of the oil or in which it could be stored. It was unloaded from the car into a tank-wagon and spread on the streets. Oil placed on the streets when they are wet and muddy will not readily penetrate the surface but a large portion thereof will run off. For this reason, the superintendent refused to permit appellee to put the oil on the streets when it was raining or when they were wet or muddy. There is no evidence showing what days the superintendent allowed appellee to place the oil on the streets. The only evidence bearing on this is that appellee finished unloading the car May 26.

Appellee contends that there is no evidence showing that the rules authorizing appellant to charge for stor-

age were ever filed with and approved by the Interstate Commerce Commission and that in the absence of such evidence there can be no recovery.

The Supreme Court of the United States in *Southern Pac. Co.* v. *Stewart* (1917), 245 U. S. 359, 62 L. Ed. 345, after calling attention to the fact that the Carmack Amendment required a carrier receiving property for interstate transportation to issue a receipt or bill of lading, said: "While there is no specific allegation in the complaint that such bill or receipt was issued, as the law makes it the duty of the carrier to issue the same, the presumption is that such duty was complied with."

And in *American Ry. Exp. Co.* v. *Lindenburg* (1922), 260 U. S. 584, 67 L. Ed. 414, the court, quoting from *Cincinnati, etc., R. Co.* v. *Rankin* (1915), 241 U. S. 319, 60 L. Ed. 1022, said: " 'It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the Federal statute or become subject to heavy penalties, and in respect of transactions in the ordinary course of business it is entitled to the presumption of right conduct.' It is a rule of general application that 'where an act is done which can be done legally only after the performance of some prior act, proof of the later carriers with it a presumption of the due performance of the prior act.' " And continuing the court said: "In the absence of proof to the contrary, we, therefore, indulge the presumption that, in basing its transportation charges upon the values recited in the receipt, the petitioner had due authority."

In harmony with the rule announced in these cases, we hold—that the rules introduced in evidence, in the

absence of any evidence to the contrary, are pre-
1. sumed to have been filed with the Interstate Com-
merce Commission and to have been published
as required by law.

Appellee next refers to the rule extending the pre-
scribed free time when the condition of weather is such
as to make it impossible to employ men and teams
2. in unloading freight or is such as to make it im-
possible to remove the freight without serious in-
jury to the freight, and contends that in order to make
that rule apply to the case at bar, it is not necessary that
it should have rained all the time, but that if the streets
were so wet and muddy that the placing of the oil there-
on would have destroyed the use of the oil, that is such
a "serious injury to the freight" under the rule as will
extend the free time. Appellee makes no claim that he
could not have employed men and teams to unload the
oil. His contention is that under his contract he was
not to put the oil on the streets while it was raining,
or when the streets were not in a fit condition because
of rain, that it was for the superintendent of streets
to determine when the streets were in proper condition
to place the oil on them, and that he distributed the oil
every day when permission was given him to do so.

The weakness of appellee's contention lies in the fact
that his failure to unload the oil was not that the condi-
tion of the weather rendered it impossible for him to
do so without serious injury to the oil. The trouble was
occasioned by the fact that he was not prepared to re-
ceive and unload it. He had no storage facilities and,
for that reason, was obliged to permit it to remain in
the car until the superintendent gave him permission
to place it on the streets. The evidence does not dis-
close the days when appellee was given permission to
place the oil on the streets, the days when he distributed
the oil, the number of hours which he worked on the

days when it was fit to distribute the oil, or the number of days that would have been required to distribute it if he had worked steadily and the streets had been in fit condition for oiling. There is no evidence as to the weather conditions at Oakland City. We observe, however, that the evidence shows that there was no rain at Princeton after May 8 until May 19, except a mere sprinkle on May 10 and 15, and a rainfall of nineteen-hundredths of an inch on May 16. Even if the condition of the weather at Oakland City was the same as it was at Princeton, it would not have been a sufficient excuse for not unloading the oil.

Appellee under the heading of "Points and Authorities," says, "Whether the time allowed for loading and unloading cars, and the charge made for detaining them beyond that time, are reasonable is a question of fact." No claim is made that either the time or charge is unreasonable, and we are not required to pass upon the reasonableness or unreasonableness of the rules relating to those questions.

The evidence is not sufficient to excuse the delay in unloading the car. The cause is, therefore, reversed with directions to sustain the motion for a new trial and for further proceedings.

### On Petition for Rehearing.

McMahan, J.—Appellee in support of his petition for rehearing calls attention to the fact that under the demurrage rules of appellant, private cars on private tracks are not subject to demurrage charges. While this fact was called to our attention on oral argument, we overlooked it, as nothing was said about it in appellee's brief. While the court will not search the record to reverse, it will search the record to affirm. And when, before a decision, attention has been called

to a proposition that will lead to an affirmation, it is our duty to affirm even though nothing is said in appellee's brief concerning the matter. The evidence shows that the tank-car in which the oil was shipped was a private car, but there is no evidence showing that it was on a private track. Appellee contends the burden was on appellant to prove that the car was not on a private track, and that the decision is, therefore, not sustained by sufficient evidence and is contrary to law. We hold, however, that a party relying upon an exception, whether it be to make out his cause of action or defense, has the burden to allege and prove the facts necessary to bring him within the exception and that the burden was on appellee to answer and prove that the car was on a private track, so as to except it from being subject to the rules providing for demurrage charges.

In *Maxwell, Exr.,* v. *Evans* (1883), 90 Ind. 596, 46 Am. Rep. 234, cited by appellee, the appellant sued the appellees who had been operating a private bank, for fraudulently converting certain bonds to their own use. Appellees answer alleged discharge in bankruptcy, that plaintiff had filed her claim in the bankruptcy proceeding and had received a dividend thereon, thus discharging appellees from further liability. This answer was held good on demurrer. There being no reply of denial, the court, in holding the answer sufficient to withstand the demurrer, stated that a party who seeks to bring his case within the statute must negative an exception. So, in the instant case, if appellee had answered that the car was privately owned and stored on a private track so that it was not subject to demurrage charges, appellant would have been called upon to negative that issue by reply. *Beecher* v. *Peru Trust Co.* (1912), 49 Ind. App. 184, 97 N. E. 23, is no longer of controlling influence. See *Humphry* v. *City Nat. Bank*

(1921), 190 Ind. 293, 130 N. E. 273; *Ashbaucher* v. *Price* (1924), *post* 604, 145 N. E. 775.

Petition overruled.