# Richmond

ANDREW W. SMITH, ETC. v. W. E. PIPPIN.

January 10, 1949.

Record No. 3411.

Present, Hudgins, C. J., and Gregory, Eggleston, Buchanan, Staples and Miller, JJ.

*Donald T. Stant* and *Bradley Roberts,* for the plaintiffs in error.

*John T. DeHart* and *M. E. Burson,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

W. E. Pippin, defendant in error, plaintiff below and herein so designated, desired to move household furniture and effects from Bristol, Virginia, to Chattanooga, Tennessee. Contact was made with Smith's Transfer and Storage, a common carrier engaged in interstate transportation of freight. It is a partnership maintaining offices in the city of Bristol and will be hereinafter called defendant in accordance with the position it occupied in the trial court.

Conveyance of the goods by truck was undertaken. While transporting the goods, the truck was overturned and the property practically destroyed.

Action for damages was instituted and by agreement of the parties, all matters of law and fact were submitted to the trial judge for determination. Judgment of $1,014.57, representing actual damages sustained, was rendered against defendant and of that it complains.

The amount of recovery for damage or destruction of this shipment is controlled by the Interstate Commerce Act and the schedule of tariff rates promulgated, fixed and published in pursuance thereof. The act appears in U. S. C. A., under Title 49—Transportation.

The provision immediately bearing upon the matter at issue is section 20, paragraph 11. The pertinent parts of that paragraph follow:

"Any common carrier * * * subject to the provisions of this chapter receiving property for transportation * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury * * * and no contract, receipt, rule, regulation or other limitation of any character whatsoever, shall exempt such common carrier * * * from the liability hereby imposed; * * * and any such common carrier * * * so receiving property for transportation * * * shall be liable to the lawful holder of said receipt, or bill of lading * * * whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury * * * notwithstanding any limitation of liability or limitation of the amount of recovery * * * or agreement as to value in any such receipt or bill of lading * * * or in any tariff filed with the Interstate Commerce Commission; and any such limitation * * * is declared to be unlawful and void: * * * *Provided, however,* That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery * * * or release as to value, and declaring any such limitation * * * unlawful and void, shall not apply * * * to property, * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or requested by order of the Interstate Commerce Commission to establish and maintain rates de-

pendent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released * * *; and any tariff schedule * * * may establish rates varying with the value so declared or agreed upon * * * ."

It is conceded that under bulletin designated Tariff No. 22, issued pursuant to the act by the Interstate Commerce Commission fixing the schedule of rates for transportation of household goods, the defendant was a duly listed carrier entitled to transport this property and charge the rate therein specified. Hence, if a lower rate was assented to by this shipper in the manner required by the act, his recovery was thereby limited.

Thus the carrier was authorized and empowered, upon undertaking to transport at a lower rate, to enter into an agreement limiting the amount of recovery to the value declared in writing by the shipper or agreed on by him in writing as the released value thereof.

Defendant insists that plaintiff sought and agreed in writing to the lower rate and that the reduced valuation or amount of recovery was fixed and determined by the tariff rate agreed on.

Under the authority of *Atchison, etc., Ry. Co.* v. *Robinson*, 233 U. S. 173, 34 S. Ct. 556, 58 L. Ed. 901, and cases therein cited, the shipper is required to take notice of the filed tariff rates. Defendant says that upon plaintiff's selecting the lower rate, he knew that a bill of lading would be issued in conformity thereto and thereby necessarily agreed that in case of destruction of the property, the amount of recovery was limited to 30 cents per pound per article as set forth in the tariff.

Plaintiff says that the lower rate was not asked for or agreed upon and no terms of shipment limiting recovery to less than actual value of the goods was made by him in writing or otherwise.

An examination of the statute will disclose that a declara-

tion in writing of reduced value by the shipper or an agreement by him in writing upon a released value is a necessary prerequisite to such limited recovery. The agreed terms must be reduced to a written memorial assented to by the shipper but it need not be signed by him. The statute has been so interpreted and construed by the Supreme Court of the United States.

Quoting with approval from a report of the Interstate Commerce Commission, in *American Ry. Exp. Co.* v. *Lindenburg*, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed. 414, that court said:

" 'It is sufficient if the shipper accepts the carrier's bill of lading without himself signing it. It becomes binding upon him by his acceptance, he being presumed to know and accept the conditions of the written bill of lading.'

"The respondent, by receiving and acting upon the receipt, although signed only by the petitioner, assented to its terms and the same thereby became the written agreement of the parties. * * * " (260 U. S. at p. 591.)

The question presented is one of fact. Our inquiry is whether the evidence conclusively established that plaintiff · declared in writing or agreed in writing upon a reduced value in case of damage or destruction of his property.

No writing of any character was signed by plaintiff or by anyone on his behalf before shipment was actually undertaken or before the damage occurred. Upon delivery in Chattanooga, a bill of lading declaring a reduced value was presented to plaintiff and signed by him or his wife on his behalf. The signature was, however, made under circumstances and reservations to be hereinafter mentioned.

Defendant is not required to transport goods of this character between Bristol and Chattanooga unless payment is made for not less than a load of 5,000 pounds. If the goods shipped weigh less than that minimum amount, the shipper is nevertheless billed for transportation of 5,000 pounds. Plaintiff's goods weighed less than that figure and he was desirous that other property be shipped so he would then be required only to pay for the weight of his goods.

Discussion was had about securing other goods to ship and that was accomplished.

Testimony on behalf of defendant is that plaintiff asked and was told the lowest rate. Witnesses also say that he inquired and was informed that the amount of recovery would be thereby limited, but he elected to ship at that rate.

After estimating the weight of plaintiff's goods, they were loaded and their true weight found to be 3,810 pounds, for which a ticket was made out. It should be observed that this weight ticket is not signed by plaintiff though a place for his signature is indicated thereon, nor is there any evidence that he ever saw it.

A bill of lading was then prepared in duplicate by defendant and both copies given to its driver. Appearing upon the face thereof is this provision:

"Shippers are required to declare in writing the released value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding *.30* cents per pound, per article.

...................., Shipper"

It was unsigned by the shipper when the goods were loaded, weighed and shipped. Both copies were in the custody of defendant's driver throughout the trip. They were never seen by plaintiff until the damaged goods arrived when both copies were presented to him. He signed the copy he retained on the line to the left of the word "Shipper," but under this signature was written, "Insurance not adjusted for damages of furniture beyond repair."

On the copy kept by the driver, he signed, "W. E. Pippin, just signing for driver."

Plaintiff had worked for a transportation company and was familiar with reduced rates and limited recovery clauses in bills of lading. Yet upon delivery he paid the charges for transportation at the lower rate. He, however, explained that this was not done until after some discussion and it was demanded by the driver upon delivery as required on the face of the bill of lading.

Plaintiff's account of the circumstances immediately prior to and incident to the shipments is in conflict with that of defendant. He denied having discussed or assented to the lower rate of charge. He says he merely discussed the weight and probability of getting other goods to make up the load and so reduce the cost to him. He further says that he inquired as to what insurance protection he would have and insisted that his property be carried safely. Upon those matters he said:

"I told them I wanted it carried down safe, without being tore up. I would rather pay for that. I asked Mr. Smith how much money I was insured for and he said $5,000 for that truck or $10,000.00 for that big van. He didn't say thirty cents. That wasn't mentioned when I asked him about that."

Both he and his wife testified that he signed the bill of lading solely as a receipt for the driver. Part of his testimony on that subject is:

"A. The driver said, 'This is the receipt to show I have delivered what is supposed to be your furniture.'

"Q. That is the reason you signed it?

"A. I knowed that wasn't nothing but the driver's receipt to show he had delivered it.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Just to show he delivered the furniture?

"A. That's right.

\*　　\*　　\*　　\*　　\*　　\*

"A. Because I just signed for the driver to show he delivered that bunch of kindling to me instead of the furniture.

\*　　\*　　\*　　\*　　\*　　\*

"Q. Just signing for the driver?

"A. Signing for driver. That is just a driver's receipt."

Defendant undertakes to excuse its failure to secure plaintiff's signature to the bill of lading before the goods were shipped or to deliver a copy of the bill to him on the ground that he did not come to the office after the goods were loaded and weighed.

From plaintiff's testimony, it might reasonably be con-

cluded that he neither asked for nor consented that his goods be carried at the lower rate. No choice of rates was made as in *White* v. *Southern Ry. Co.*, 208 S. C. 319, 38 S. E. (2d) 111, 165 A. L. R. 988, relied on by defendant.

On facts quite similar to those in the case at bar, we find the following announcement in *Caten* v. *Salt City Movers, etc., Co.*, 149 F. (2d) 428, at page 432.

"The statute makes it abundantly clear that the carrier's common law liability for full actual damages, whether or not caused by its negligence, is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods. * * * "

The trial judge had the opportunity and benefit of seeing and hearing the witnesses testify. Upon testimony which is conflicting upon material matters, he decided that it had not been proved that plaintiff declared in writing the value of his goods or agreed in writing upon a released value thereof.

His judgment upon the conflicting evidence is entitled to the same weight as the verdict of a jury. *Martin* v. *Richmond, etc., R. Co.*, 101 Va. 406, 44 S. E. 695; *Hoster-Columbus Associated Breweries Co.* v. *Stag Hotel Corp.*, 111 Va. 223, 68 S. E. 50, and *Appalachia* v. *Mainous*, 126 Va. 419, 101 S. E. 359.

That this court might have arrived at a different factual conclusion is not sufficient. Where the trial judge determines the question of fact at issue and the evidence and not the facts has been certified, his finding will not be disturbed unless plainly wrong or without evidence to support it. *Wyckoff Pipe, etc., Co.* v. *Saunders*, 175 Va. 512, 9 S. E. (2d) 318.

The testimony and circumstances appearing in the record furnish sufficient evidence to sustain the conclusion reached by the trial judge and the judgment is affirmed.

*Affirmed.*