HILDA (MRS. HARRY) STRICKER, appellee, v. CHICAGO & NORTH-WESTERN RAILWAY SYSTEM, appellant.

No. 47503.

(Reported in 40 N.W.2d 30)

650

DECEMBER 13, 1949.

REHEARING DENIED MARCH 10, 1950.

Underhill & Underhill, of Onawa, and Miller, Davis, Hise & Howland, of Des Moines, for appellant.

B. H. Morrison, of Mapleton, for appellee.

OLIVER, J.—Plaintiff and her family had moved from Schleswig, Iowa, to California. Her son-in-law, Melvin Hedberg, who remained temporarily at Schleswig, talked with V. M. Shearman, defendant's agent at Schleswig, about shipping to plaintiff fourteen boxes and crates containing her household goods. Shearman

was told Hedberg would write him later where to ship the goods. October 30, 1945, Hedberg wrote Shearman to have the fourteen boxes picked up by the local drayman and to "Ship by freight to Mrs. Harry Stricker, 5122 W. 111th Place Inglewood California, prepaid", and that arrangements had been made with Farmers State Bank, Schleswig, to pay the charges.

The foregoing statement covers all the negotiations between plaintiff and defendant before the goods were shipped. Shearman testified Hedberg left the impression the shipment was to be moved at the cheapest rate. Hedberg testified nothing was said about rates or valuations, and the trial court found no instruction was given Shearman that the goods were to be moved at the lowest rate. Defendant specifically stated it took no exception to that finding.

Shearman advised the drayman, the latter delivered the shipment to defendant November 5, and Shearman billed it out. The following day Shearman presented the original bill of lading to the bank and collected a freight charge of $51.04 (plus tax) shown on it. The bank mailed the bill of lading to plaintiff November 26. The shipment arrived at Inglewood December 1. Plaintiff's husband, Harry Stricker, testified he called for it and was told by the agent there was an "extra cost" of about $26. Stricker paid this and went to the freight house to get the shipment. After Stricker made the payment the agent told him the shipment was two boxes short and handed him a freight bill upon which was written a notation to that effect. It is not contended plaintiff or anyone in her behalf ever signed the bill of lading or any other instrument connected with the shipping.

The two boxes of goods were never located. Plaintiff brought this action and the court rendered judgment against defendant for $850, the value of the lost goods. Defendant had offered to confess judgment for $121.57 and costs, upon the theory its liability was limited to $20 per hundred pounds weight of the lost boxes. Upon this appeal the question is whether defendant's liability was so limited. Section 20(11), chapter 1, of the Interstate Commerce Act, 49 U.S.C., the pertinent statute, states, in part, that any common carrier subject to the statute, receiving property for interstate transportation shall issue a receipt or bill of lading and shall be liable for the loss or damage to the

property and no contract or regulation shall exempt the carrier from liability for the full loss: *"Provided, however,* That the provisions hereof * * * shall not apply * * * to property * * * concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property * * * and any tariff schedule * * * may establish rates varying with the value so declared and agreed upon."

█ To bring itself within the exception of the proviso limiting liability, the carrier must establish a declaration in writing by the shipper of reduced value of the property or an agreement in writing of released value. Clubb v. Hetzel, 165 Kan. 594, 198 P.2d 142, 147; Smith v. Pippin, 188 Va. 869, 51 S.E.2d 159, 161. The declaration or agreement need not be signed by the shipper. American Railway Exp. Co. v. Lindenburg, 260 U. S. 584, 591, 592, 43 S. Ct. 206, 209, 67 L. Ed. 414, states it is sufficient if the shipper accepts the carrier's bill of lading without himself signing it—"The respondent, by receiving and acting upon the receipt, although signed only by the petitioner, assented to its terms and the same thereby became the written agreement of the parties. * * * Having accepted the benefit of the lower rate dependent upon the specified valuation, the respondent is estopped from asserting a higher value."

█ I. The bill of lading issued by defendant in the case at bar was on a printed form used by carriers in this section of the United States. It contained the following:

"Note—Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

PER

_____."

This was the place provided in the printed form for the writing of the agreed or declared value. The blanks were not filled in. Although a "writing" of the agreed or declared value,

required by the statute, would not be invalid because not made in the space provided therefor, a "writing" out of context at another place in the bill of lading to be effective should be reasonably clear. A heading printed on the bill of lading was entitled:

"DESCRIPTION OF ARTICLES, SPECIAL MARKS AND EXCEPTIONS."

Under this heading in typewriting was:

"Personal effects HHGds
   Rel @ 20.00 cwt
1 bbl   1 crate   1 chest locked   11 fib crtns    14 pcs."

The "writing" relied upon by defendant is "Rel @ 20.00 cwt".

Plaintiff contends this language is insufficient to comply with the statute. It is not a common expression, nor is its meaning generally understood. Defendant deemed it necessary to explain such meaning to the court by the testimony of Shearman "the letters * * * meant released at $20.00 per hundredweight." However, no explanation was made to the housewife-consignee or her son-in-law, who was listed as shipper, neither of whom was shown to have had any special knowledge of shipping. They should not be bound by cryptic symbols whose meaning is unintelligible to the average shipper.

Missouri-Kansas-Texas R. Co. v. King, Tex. Civ. App., 265 S.W. 761, 762, is here in point. The decision states:

"The contract of shipment, nor any other evidence, showed that appellee had declared in writing, or agreed upon in writing, that the property was of a certain value. There was no evidence which brought the contract of shipment within the provisions of the federal statute. No value was placed in the body of the contract, and nothing was indicated therein, as to the value of the property. The unintelligible words, 'Rel. Val. 10.00 per cwt.' would not meet the demands of the statute as to a declaration of value."

Norfolk & Western Ry. v. Harman, 104 Va. 501, 506, 52 S.E. 368, 370, in which the writing was "Rel. Val. Lts. (or Ltd.)

5 cwt.", states: "* * * it cannot be said that their meaning was discernible to a person of ordinary intelligence."

It may be noted that in Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639, 33 S. Ct. 391, 57 L. Ed. 683, and also in Tuller v. Chicago, R. I. & P. R. Co., 186 Iowa 1070, 1078, 168 N.W. 301, the abbreviated legend was merely intended to refer to or connect with a formal written contract of release in regular form. In the case at bar the symbols were the only "writing" and are relied upon as constituting the contract itself.

We hold the expression "Rel @ 20.00 cwt" under the heading "DESCRIPTION OF ARTICLES" etc. was insufficient to constitute a declaration of value or an agreement fixing the released value of the property, within the requirements of the statute.

II. Defendant states plaintiff was presumed to know the tariffs and the limitations of values based thereon and it contends that, having accepted the benefit of the lower rate dependent upon the specified valuation, plaintiff was estopped to assert a higher value. The premise upon which the contention is founded is not sustained by the record. The goods were billed out by defendant without any disclosure, suggestions or instructions by plaintiff or Hedberg concerning valuations or rates. In the absence of such disclosure defendant had a right to assume that the higher of the rates based upon valuation was applicable. Kansas City Southern Ry. Co. v. Carl, 227 U. S. 639, 33 S. Ct. 391, 57 L. Ed. 683. There had been no course of dealings between the parties which would justify defendant in selecting a reduced rate. The bill of lading listed the rate of "545" and the freight charge at $51.04. This $51.04 figure was incorrect for a rate of "545", but the bank paid it. The actual and apparent authority of the bank seems to have been limited to paying whatever shipping charge defendant presented. Plaintiff never saw the bill of lading until about the time the goods arrived at Inglewood.

About December 4 plaintiff was notified the goods had arrived. Mr. Stricker called for them. He was told there was an extra cost of about $26. After he paid this he was handed the freight bill and was told of the loss of the two boxes. This freight bill had been made out by the carrier December 1, after the goods reached Inglewood with the two boxes missing. It showed a

freight rate of "681." Defendant's evidence showed the "545" rate listed on the bill of lading of November 5 was erroneous. If this figure did not express the intent of and did not bind the carrier it should not serve to inform the shipper or limit her rights.

The trial court characterized the procedure of defendant at Inglewood as "an effort on the part of the company to contract for a limited liability after the loss had occurred and its liability had arisen, with knowledge of such loss on the part of the company and with no knowledge thereof on the part of the shipper." In a case of this kind the shipper's rights must be determined by what transpired before the goods were lost. Hunter v. American Railway Exp. Co., Mo. App., 4 S.W.2d 847. As pointed out in Caten v. Salt City Movers & Storage Co., 2 Cir., N. Y., 149 F.2d 428, 432, a conversation respecting valuation, held after the goods were destroyed was "too late, of course, to count as a valuation upon which the rate was based."

The facts appearing in the record bring this case within the rule of the Caten case, in which no bill of lading or receipt was delivered to the shipper, although, following a telephone conversation, the carrier had made out a bill of lading in which the valuation was limited. This was destroyed when the van carrying the goods and its contents were burned. The decision states (149 F.2d at page 432):

"The statute makes it abundantly clear that the carrier's common law liability for full actual damages * * * is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods. * * * Here nothing was done by the shippers which amounted to written action by them as to valuation, and any agreement limiting the defendant's liability to less than the actual value was void. Therefore * * * the defendant was liable for the full value of the plaintiffs' goods."

In Smith v. Pippin, 188 Va. 869, 874, 51 S.E.2d 159, 161, after the shipper knew of the damage, the blank form on the bill of lading, declaring a value of not exceeding thirty cents

per pound, was signed by him with his notation written there-under, "'Insurance not adjusted for damages of furniture beyond repair'" and on the driver's copy "'just signing for driver.'" Although he was familiar with reduced rates and limited recovery clauses, he paid the charges for transportation at the lower rate after the loss, explaining it was demanded by the driver upon delivery as required by the bill of lading. A judgment for the full amount of the damages was affirmed on substantially the same reasoning as in the Caten case. Clubb v. Hetzel, 165 Kan. 594, 198 P.2d 142, involves a somewhat sim-ilar factual situation. The court held the carrier had not met the burden imposed upon it to place itself within the exception of the statute by establishing a contract limiting its liability.

Loeb v. Friedman's Express, 187 Misc. 89, 94, 65 N. Y. S.2d 450, 454 (affirmed 271 App. Div. 873, 66 N. Y. S.2d 634, appeal granted 271 App. Div. 916, 67 N. Y. S.2d 690, affirmed 296 N. Y. 1029, 73 N.E.2d 906, certiorari denied Friedman's Express v. Loeb, 331 U. S. 851, 67 S. Ct. 1743, 91 L. Ed. 1859) states:

"In order to sustain a limitation of liability in this case we should be obliged to go beyond the earlier cases and to hold that where a bill of lading in the form here used, received by the shipper and signed by him, contains a legend calling for the declared value to be stated by the shipper, which value is not inserted, that in itself is tantamount to a declaration in writing of the value of the shipment on the basis of the minimum tariff. The statutory language has no such meaning."

We agree with the conclusion of the trial court that the fixing of the rate by defendant after defendant knew of the loss and the subsequent collection of the unpaid amount of the tariff based thereon were insufficient to bind plaintiff or estop her from recovering the full value of the lost goods.—Affirmed.

HAYS, C. J., and SMITH, BLISS, GARFIELD, MANTZ, and MULRONEY, JJ., concur.