## ATLAS VAN LINES, INC. *v.* REITZ

[No. 307, September Term, 1965.]

*Decided April 29, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*William B. Whiteford,* with whom were *William M. Nickerson* and *Due, Whiteford, Taylor & Preston* on the brief, for appellant.

*Richard C. Rice,* with whom were *Ernest N. Cory, Jr., James G. Boss* and *Cory, Boss & Rice* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal presents a question as to whether a motor carrier, which failed to comply with the provisions of the Interstate Commerce Act and the rules and regulations established by the Interstate Commerce Commission, has effectively limited its liability for loss and damage to household goods during shipment.

In September of 1962, Margaret M. Reitz (shipper) contacted Atlas Van Lines (carrier) regarding the transportation of her household goods from New Orleans (Louisiana) to Laurel (Maryland). It was agreed between the parties that the goods would be stored in the warehouse of the carrier in Louisiana until such time as the shipper requested delivery in Maryland and the goods were thereafter turned over to the carrier for storage and subsequent shipment.

The shipper paid the storage charges from time to time and in November of 1963 inquired as to the amount of the shipment charges. On being informed by the carrier that the cost would be $125 for "transportation charges for 820 lbs. as 1000 lbs. @ 12.50 cwt.," the shipper mailed a check for that amount and requested delivery of the goods to her at Laurel.

The carrier, without delivering a bill of lading to the shipper at any time, transported the goods by truck, along with other freight destined for the same general northeastern area of the country. En route, the truck made several stops, including one in New York City where the truck was broken into and certain items belonging to the shipper were damaged or stolen. Such of the goods as had not been stolen, including the damaged items, were thereafter delivered to the shipper in Laurel. Subsequently, the shipper submitted a claim for damages to the carrier and, upon its refusal to pay the full amount claimed, she sued and obtained a judgment in the amount of $1150, representing the full amount of damages sustained by the shipper, and this appeal followed.

Atlas Van Lines was an interstate motor carrier operating

under the provisions of 49 U.S.C. § 20(11),[1] by virtue of § 319 of 49 U.S.C.,[2] and was a participating carrier in a tariff [3]

1. Section 20(11) of the Interstate Commerce Act provides: "Any common carrier * * * subject to the provisions of this chapter receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such common carrier * * * from the liability hereby imposed; and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading * * * for the full actual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * *: *Provided, however,* that the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released * * *."

2. Section 319 of the Interstate Commerce Act provides: "The provisions of section 20(11) * * * of this title, together with such other provisions of chapter 1 of this title (including penalties) as may be necessary for the enforcement of such provisions, shall apply with respect to common carriers by motor vehicle with like force and effect as in the case of those persons to which such provisions are specifically applicable."

3. Movers' & Warehousemen's Association of America, Inc.,

filed with the Interstate Commerce Commission which established rates for the shipment of household goods. The tariff fixed one rate to be charged where the declared value of the goods shipped did not exceed thirty cents per pound per article and higher rates to be charged where the declared value exceeded thirty cents. The rates charged here by the carrier were based on the rate schedule published in the tariff for goods not exceeding a declared value of thirty cents per pound per article. The carrier therefore contends that its obligation to the shipper should be limited to thirty cents per pound per article, in accordance with the rate charged, rather than the full amount of the shipper's damages.

The limitation of an interstate carrier's liability is governed by federal law. *New York, N. H. & H. R. R. v. Nothnagle,* 346 U. S. 128, *Boston & Maine R.R. v. Hooker,* 233 U. S. 97 and *Adams Express Co. v. Croninger,* 226 U. S. 491. Section 20(11) imposes a liability on every common carrier, which is subject to the provisions of Title 49 of the United States Code, as the instant carrier was, for the full actual loss, damage or injury caused by it to the property which it has received for transportation and any attempt to limit liability is generally prohibited. The statute, however, does provide certain exceptions to the general prohibition. One such exception is to the effect that where the carrier has been authorized or required by the I.C.C. to adhere to a tariff establishing "rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property," the declaration or agreement of the shipper limits the liability of the carrier to the value so declared or released and the shipper is precluded from receiving an amount exceeding that value.

The carrier argues that this exception to liability imposed by § 20(11) applied in the case at bar, but we do not agree. In order to limit the liability of a carrier under the exception it is necessary to have either a written declaration of value by the shipper or a written agreement as to the released value and

---

Agent, Tariff No. 29, MF-I.C.C. No. 50, naming Local and Joint Rules on Household Goods between points as shown; Issued: June 20, 1962; Effective: August 1, 1962.

without one or the other there is no criterion, short of the full actual damages sustained by the shipper, for limiting the liability of the carrier. Since there was nothing in writing (other than a letter stating the cost of the proposed shipment) showing that the shipper had either made a declaration or agreed to a released value, it is clear that the exception to liability imposed by § 20(11) is not applicable in this case.

The same result was reached by the Second Circuit Court of Appeals in *Caten v. Salt City Movers & Storage Co.,* 149 F. 2d 428 (1945), where the only writing received by the shipper was a letter from the carrier stating the shipping cost on the basis of the estimated weight of the household goods without mentioning the value thereof and where the goods thereafter delivered to the carrier, who failed to issue and deliver a bill of lading or receipt to the shipper, were subsequently destroyed during transit. In affirming the judgment based on the actual loss sustained by the shipper, the court said, at p. 432:

"* * * It seems plain that nothing was done by these shippers in writing, or in respect to any writing, which had anything whatever to do with a valuation of their property for shipment under one rate or any other. * * * To permit a carrier, without any action whatever by the shipper in respect to valuation in writing, to limit its liability on the basis of declared or released value on which the rate was charged would be to ignore entirely the statutory requirement that the shipper must make the declaration or agreement in writing, and nullify that part of the proviso.

"The statute [49 U.S.C. § 20(11)] makes it abundantly clear that the carrier's common law liability for full actual damages, whether or not caused by its negligence, is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods. * * *. Only by giving the shipper an opportunity to choose between higher and lower rates based upon valuation can the carrier place the shipper who has selected a lower rate

422

in the prescribed manner in the position where he is estopped to assert loss or damage to an amount in excess of the declared valuation upon which the rate was fixed."

The *Caten* case has often been cited as the proper interpretation of § 20(11) where a question is raised as to when a carrier may limit its liability. See *Vandenbergh v. Allied Van Lines, Inc.,* 351 P. 2d 537 (Mont. 1960), *cert. den.* 364 U. S. 830 (1960) ; *Glickfeld v. Howard Van Lines, Inc.,* 213 F. 2d 723 (9th Cir. 1954) ; *Rabb v. Railway Express Agency,* 95 N. E. 2d 784 (Ohio Ct. App. 1950) ; *Miller & Miller Motor Freight Lines, Inc. v. Gilliland,* 232 S. W. 2d 886 (Tex. Civ. App. 1950) ; *Smith v. Pippin,* 51 S. E. 2d 159 (Va. 1949) ; *Stricker v. Chicago & Northwestern Ry. System,* 40 N. W. 2d 30 (Iowa 1949). And see *Surprise Furniture Co. v. Long Island R.R.,* 107 N. Y. S. 2d 316 (Sup. Ct., Trial Term 1951).

In *Vandenbergh v. Allied Van Lines, supra,* where the carrier, at the request of the shipper, submitted a written estimate for moving household goods from New York to Montana without mentioning the valuation of the goods or alternate rates and where the bill of lading containing a liability limitation clause was issued but was not received by the shipper until the goods were received in a damaged condition, the Supreme Court of Montana, finding that the shipper had not declared or agreed upon a value in writing, held that the carrier was prevented from asserting the limited liability set forth in the tariffs and bill of lading. In reaching its decision, the Court, besides quoting extensively from the *Caten* case, also cited the *Nothnagle* case (346 U. S. 128), as controlling, and quoted therefrom (at p. 541 of 351 P. 2d 537) as follows:

"But only by granting its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge can a carrier lawfully limit recovery to an amount less than the actual loss sustained. [Citing cases.] Binding respondent [shipper] by a limitation which she had no reasonable opportunity to discover would effectively deprive her of the requisite choice; such an arrange-

ment would amount to a forbidden attempt to exonerate a carrier from the consequences of its own negligent acts."

The carrier in the instant case, besides relying on § 20(11), also argues that its liability is limited by the terms of the tariff filed with the I.C.C. The claim is "that with the filing and publishing of its tariff schedule with the [I.C.C.], said schedule becomes similar in effect to a statute and as such becomes binding on all parties." Again we do not agree. The failure of the carrier to issue and deliver a bill of lading prevents it from relying on the provisions of the tariff limiting its liability. Rule 3(a) of the tariff states:

"Unless otherwise provided, when property is transported subject to the provisions of Tariff, the acceptance and use of the Uniform Household Goods Bill of Lading as described herein is required."

And Rule 3(b) states in pertinent part:

"The rates shown herein are reduced rates conditioned upon the use of the Uniform Household Goods Bill of Lading. Consignor [shipper], at his option, may elect not to accept the terms of the Uniform Household Goods Bill of Lading, and in lieu thereof to have the carrier transport the property with carrier's liability limited only as provided by common law * * *; the rate charge therefor will be 100 percent higher than the transportation rate contained in this Tariff as would apply for such shipment if offered for transportation at a released value not exceeding 30 cents per pound per article. * * *."

The failure to comply with Rule 3 constituted a substantial departure by the carrier from the tariff requirements and as a result it is estopped from invoking the protection against full liability afforded by the tariff.

*Judgment affirmed; appellant to pay the costs.*