## 62444. McCARTHY v. ALLIED VAN LINES, INC.

BIRDSONG, Judge.

Interstate Carrier Liability for Lost Goods. The facts show that a Mrs. Wetzel prior to her death delivered possession of a service for twelve of sterling flatware as well as some plated tableware to a lifelong friend, Mrs. Johnson. Mrs. Johnson was to safeguard the silver and ultimately deliver it to Mrs. Wetzel's niece, Mrs. McCarthy, who lived in Savannah. After Mrs. Wetzel's death, Mrs. Johnson contacted Mrs. McCarthy by telephone to make arrangements for delivery of the silver plus some other unrelated household items to Mrs. McCarthy in Savannah. Mrs. McCarthy directed Mrs. Johnson to ship the goods by common carrier from Bellefonte, Pennsylvania where Mrs. Wetzel had lived to Savannah. Mrs. Johnson was personally acquainted with a carrier in Pennsylvania who was an agent for Allied Van Lines, appellee herein. Mrs. Johnson contacted the carrier and arranged for shipment of the goods. During negotiation, Mrs. Johnson was informed that because of the enhanced value of silver she should enter an appropriate value for the shipped goods on the face of the bill of lading. Mrs. Johnson, not having any idea as to the actual value of the silver, sought information as to value from Mr. and Mrs. McCarthy. After several phone calls, Mr. McCarthy authorized Mrs. Johnson to insert as the released value of the goods (i.e., the entire shipment) the sum of $4,000. Mrs. Johnson was informed in substance that because the value of the shipment was increased from $300 (the undeclared release value of 60-cents per pound for the 500-pound shipment) to $4,000 the shipment cost would be increased by $20. Mrs. Johnson admitted that she did not read all of the printed material on the shipping documents prior to signing the same, which perhaps is understandable inasmuch as the shipment was C. O. D. to the McCarthys. Mrs. Johnson acted as agent for McCarthy and inserted the value of the shipment as $4,000 as agent.

Upon arrival of the shipment in Savannah, Mrs. McCarthy

discovered the silver missing from the shipment. The McCarthys then filed a claim against Allied Van Lines for the full value of the missing silverware which was shown to be $18,589.50. Allied denied liability in excess of $4,000. After depositions, interrogatories, and admissions, Allied moved for partial summary judgment limiting their liability to $4,000. The trial court entered partial summary judgment in favor of Allied; thereafter Allied admitted liability in the amount of $4,000 and the trial court entered final judgment in favor of Mrs. McCarthy in the amount of $4,000. Mrs. McCarthy filed the instant appeal enumerating as error the grant of partial summary judgment to Allied and entry of the $4,000 judgment in her favor. *Held:*

The primary thrust of Mrs. McCarthy's contention is that Allied is estopped from claiming a limitation of liability. This contention finds its basis in the argument that Allied and its Pennsylvania agent violated several provisions of the Interstate Commerce Commission regulations governing the shipment of household goods. It is clear that the shipment was one of interstate commerce; therefore, federal statutory and common law controls. See L. E. Whitlock Truck Service v. Regal Drilling Co., 333 F2d 488 (10th Cir. 1964).

The complaint admits that Mrs. Johnson was the agent of Mrs. McCarthy. It is well established that a principal is bound by the acts of his agent. Marohn v. Burnham Van Services, 478 FSupp. 49, 51 (N. D. Ill. 1979).

Contractual limitations of liability between common carriers and shippers are authorized by the Interstate Commerce Act as amended. A limitation of liability may be created where the value of the shipment is declared in writing by the shipper. 49 USC § 10730. In this case the bill of lading, as signed by Mrs. Johnson with the authority and consent of the McCarthys, shows a declared value in writing by the shipper in completely unambiguous terms. Under settled contract law the shipper (appellant) is bound by the agreement. See Marohn v. Burnham Van Services, supra. Moreover, settled contract law dictates that evidence aliunde the unambiguous bill of lading (contract) will not be admitted to enable the shipper to avoid the terms of the limitation of liability contained in the bill of lading. American R. Express Co. v. Lindenburg, 260 U. S. 584, 592 (43 SC 206, 67 LE 414).

Appellant contends that there is evidence in the record showing that in disregard of ICC regulations, Allied's agent in Pennsylvania attempted to sell insurance coverage to Mrs. Johnson to cover the shipment of the sterling silver and plate. Our examination of the record lends no support to this conclusion by appellant. There is evidence in depositions both from Mrs. Johnson and the carrier in

Pennsylvania that Mrs. Johnson was encouraged to put an increased value on the shipment. Once the figure of $4,000 had been established, Mrs. Johnson was informed that this would increase the rate charged for the shipment. In his oral examination in the depositions, the attorney for appellants sought to characterize the additional costs as an insurance premium. However, Mrs. Johnson did not indicate that she considered the increased cost to be an insurance premium though she did state the McCarthys would be able to recover for any lost silver. The agent in Pennsylvania clearly denied that the $20 involved was anything other than an increase in rate. Thus we agree with the inherent conclusion of the trial court that there was no credible evidence that a part of the contract of shipping (i. e., the bill of lading) provided for the sale of insurance. The insertion of the letters "INS" on the bill of lading where the value $4,000 was shown does not show that Mrs. Johnson purchased insurance in that amount or paid a premium for that amount of insurance, especially where she testified that the insertion of that value figure simply increased the shipping rate by $20. Nor did the court err in refusing to admit or consider oral evidence designed to alter the terms of an express and unambiguous agreement. Appellant's argument that Allied should be estopped from claiming a limitation of liability because of violations of ICC regulations misses the point. Appellant has offered no authority nor are we aware of any authority that holds that violations of ICC regulations voids an otherwise lawful contract between shipper and carrier. The answer to such violations is in the form of penalties running from the carrier to the ICC.

Based on the foregoing we are in agreement with the trial court that there were no issues of material fact to be resolved by a jury. The purpose of the Summary Judgment Act is to eliminate the necessity for trial by jury where, giving the opposing party the benefit of all reasonable doubt and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Summer-Minter & Assoc. v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173); *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442). It follows that the trial court did not err in entering partial summary judgment in favor of Allied as to the limits of liability or in entering final judgment in the amount of $4,000 as to appellant.

*Judgment affirmed. Shulman, P. J., and Carley, J., concur. Sognier, J., disqualified.*

DECIDED NOVEMBER 30, 1981 —
REHEARING DENIED DECEMBER 15, 1981.

*Charlton E. Clark,* for appellant.
*Charles W. Brannon, Jr.,* for appellee.