Henry Epstein, J.
W. R. Grace & Co. sues defendant Railway Express Agency, Inc. to recover the value of a shipment of crude platinum which defendant was to deliver to Malvern, Pa., but which was never delivered. Plaintiff is the parent corporation and Davison Chemical Company is a division of plaintiff. Colamer Company, Inc., deals in precious metals and sold to plaintiff’s Davison crude platinum of the actual value of $56,245.75. This precious metal, in crude powdered form, was tested in the laboratories of Ledoux & Company of Teaneck, New Jersey and one sample delivered to J. Bishop & Co. in Malvern, Pa. to whom the shipment was addressed by Colamer Company as directed by plaintiff’s Davison division. Two other samples were shown, one for an “ umpire ” in case of a dispute over the analysis and one for the analysis itself. The shipment, in two sealed canisters, was returned from the Ledoux laboratories under the armed guard with whom it had been taken to the laboratories by the Colamer Company. It was then restored in the vault of Colamer at the Chase Manhattan Bank at 535 Fifth Avenue, New York City. These events all took from between December 15,1955, when plaintiff contracted to purchase the platinum from Colamer and December 20, *994 1955. The tests showed 85% fine platinum and on receipt of the analysis Grace paid Colamer $56,245.75, the purchase price fixed and billed to plaintiff Grace & Co. on December 16,1955.
On December 20, 1955 defendant’s employee, a truck driver, Frank L. Mullaney, received the box containing the two canisters of platinum addressed and consigned to J. Bishop & Co., Malvern, Pa. for refining. Mullaney had never engaged in carrying precious metals or those classified as such in the Express ’ classification. He drove an ordinary truck, was unarmed, had no armed guard and was wholly unaware he was to undertake a shipment of a precious metal. The shipment was made “ F. O. B. Vault ”. The uniform express receipt issued was the ordinary merchandise receipt, fixing the liability at $50 or 50 cents per pound. The shipment was set by shipper at a weight of 50 pounds. Defendant received $2.90 for the prepaid shipment. The receipt was signed and written out by Mullaney, the defendant’s driver. Mullaney took the box, which was wrapped but contained no indication whatsoever on its wrappings or tags to indicate any value beyond $50 or any clue to its contents.
On the receipt delivered to Colamer Company by Mullaney was written “ (platinum) ” which, when he had asked the ' contents, was what had been told to him. The shipment had been covered by insurance and hence was made at the lowest merchandise rate. The receipt delivered by defendant’s driver reads: “The value herein declared by shipper to be $50.00 which the company agrees to carry upon the terms and conditions printed on the back hereof, to which the shipper agrees, and as evidence thereof accepts this receipt.”
Such a shipment, on which the receipt was issued was “ subject to the classification and tariffs in effect on date of issue ”. The box was delivered later in the day to the ‘ ‘ value room ’ ’ receiving station of defendant in Long Island City, where, without any knowledge of its contents, and not ascertainable from anything on the package, it was placed in the cage or compartment to await transhipment. At that point all trace of the shipment was lost and it was never delivered to its consignee, J. Bishop & Co. in Malvern, Pa.
One question which must be here determined is whether the provision for shipment of “ Precious Metals, N. O. S.” meaning ‘ ‘ not otherwise specified ’ ’, shall apply. The Express regulations, rule 43-B(h), suppl. No. 23 provide: “Precious Metals, N. O. S.: Precious Metals other than Gold and Silver (Platinum, Palladium, Iridium, etc.) not including articles manufactured thereof will be charged for at Gold Coin Rates named in Rule *995 41-B(b), page 7 of this supplement on actual value and First Class Package rates on weight in excess of 2 pounds to the $1,000 actual value. On shipments valued at less than $1,000 no charges will be made for weight unless it exceeds 2 pounds. ’ ’
The shipment here was not so stated or made known to defendant by anything on the shipment itself.
The “Money Classification” of defendant’s rules — rule 40A(a) suppl. No. 23 provides: “Shipments of * * * Precious Metals * * * will not be accepted for shipment in packages containing ordinary merchandise unless such articles are described, and their value separately stated, in the Uniform Express Receipt, as valuable articles of this character are transported by the express companies only through a special-department. * * * Express charges in such mixed packages shall be computed as follows ”.
Then followed the terms for valuation of such a mixed shipment. This was not such a shipment. The testimony reveals that an ordinary person could not distinguish raw platinum from sand or other product and could not identify it as a precious metal. When told “platinum” was in the box, the driver Mullaney did not ask the value, nor did he know of the value of the contents of the shipment. For all he knew the contents might have only had the value of $50. The “ freight assorter ” at the Long Island City receviving station received the box from the driver about 8:00 p.m. on December 20, 1955. There were no markings on the box to indicate contents and when he asked he was told they were “ platinum ”. The money clerk of the defendant’s terminal in Long Island City gave a receipt for the box and placed the box in the “ value room ”. No receipt was available to show its exit. It was never received by the consignee, J. Bishop & Co. of Malvern, Pa.
The ‘ ‘ king label ’ ’, pasted on the box itself by the defendant’s driver, taken from the receipt of which it was a part, merely had on it “ declared value ” of $50. Defendant’s driver was told it was covered by 1 ‘ outside insurance ’ ’ when he inquired of value. The money clerk at the defendant’s Long Island City unit testified (deposition) that a package which was not classified as 1‘ money value ’ ’ could go out without a signature. This witness, whose deposition was read by plaintiff, had by the time of trial disappeared and could not be located even by his own family.
Had the shipment been marked and classified in the “ money classification” it would have cost $130.93 for the delivery to Malvern, Pa. To warrant this rate the identification of con *996 tents must be on the package as required by the Express company rules 41, 42, 43, 44. Plaintiff’s counsel, in answer to a question from the court, took the position that it was immaterial whether defendant knew of the contents of the shipment— that liability was fixed by the regulations of the Interstate Commerce Commission as published by the Express company, and that even if the shipper concealed the contents so that they could not be ascertained from the container, nevertheless defendant must be held for the loss. For this conclusion, with which this court disagrees, counsel for plaintiff refers to the case of New York Honduras Rosario Min. Co. v. Riddle Airlines (3 A D 2d 457, affd. 4 N Y 2d 755). A careful study of the record in that case, decided April 11, 1956 in this court, has been made. The Appellate Division of this department reversed and directed judgment for plaintiff in the full value of the gold and silver ore there lost. The Court of Appeals affirmed.
In the Rosario case (supra), mixed gold and silver bullion was shipped via airplane from San Salvador to American Smelting Company in Perth Amboy, New Jersey. The value was over $50,000. The declared value on shipment was $100. The original carrier (T. A. N.) was only authorized to ship as far as Miami, Florida. TAN’s “ airway bill ” expressly provided for the shipment beyond Miami to ultimate destination to be via Biddle Airlines, the defendant. This last leg of the air journey was paid for by TAN at the rate of $49.74. Plaintiff in the case, Bosario Mining Co., having insured the shipment, sought to save on the cost of shipment and therefore fixed the $100 valuation. TAN offered the shipper a choice of valuation and shipping rates, but, as held by the Appellate Division, the Biddle Airlines’ rates, as filed with the Civil Aeronautics Board, required the actual value of a bullion shipment to be declared. In such case the charges would be based on such weight and value of the shipment'. Biddle’s tariffs did not permit of the arrangements made by TAN with Bosario. 1 ‘ TAN had no through rates or services ’ ’ as found from the record by the Appellate Division. TAN could not fix Biddle’s rates beyond Miami, nor authorize Biddle to carry bullion in violation of the C. A. B. regulations. Since Biddle’s deviation constituted a violation of a filed tariff, which could not be departed from by a carrier, actual value governed Biddle’s transport of the bullion and hence the public policy set forth in the C. A. B. regulations controlled. Biddle was held for the full value of the bullion lost in transit instead of the $100 fixed and limited loss in TAN’s agreement.
*997 Now see how the instant case varies from the above on the facts and on the reasoning applied to the facts in the Rosario case by the Appellate Division. In the instant case the shipper concealed the contents in the package or box containing the platinum. Nothing thereon indicated its contents. (In the Rosario case the contents were specified on shipment.) In the instant case, except for the casual response to the defendant Express Agency driver’s inquiry, there was no indication or disclosure of the contents or value. No 1 ‘ value ” receipt was given and there was nothing to indicate the said value, even if there were some platinum in the box delivered to defendant. In the Rosario case defendant Riddle acted as a transhipping carrier for TAN and in violation of its own (Riddle’s) filed tariffs. In the instant case defendant Express Agency sent an ordinary driver, unarmed and with no information of the nature of the shipment at the express request of the shipper. It is the contention of plaintiff in the case at bar that a shipper can play fast and loose with the carrier and that the carrier must at its peril ascertain the contents, irrespective of the shipper’s purposeful concealment. This court cannot subscribe to such argument and draws a clear distinction between the facts of the Rosario case and the instant case. It is sinful for the law to open the door to fraudulent concealment and invite shippers to utilise the fact of insurance coverage as a medium for evading the regulations fixed upon the carrier by government. The insurer has also an obligation to see that the insured shipper does not engage in “ pinch penny ” fraud at the expense of the carrier.
The concealment by plaintiff shipper in order to save the difference between $130.93 and $2.90 should not, on the facts herein, permit plaintiff to visit the loss suffered upon defendant Express Agency. This court observes no sound public policy to be served by such a result. Decisions of the Supreme Court of the United States under the Interstate Commerce Act (34 U. S. Stat. 593, as amd. [U. S. Code, tit. 49, § 1 et seq.]) would seem to support this conclusion (Adams Express Co. v. Croninger, 226 U. S. 491, 504-505; Southeastern Express Co. v. Pastime Co., 299 U. S. 28, 29). New York’s rule is not different (D’Utassy v. Barrett, 219 N. Y. 420, 425). (See, also, American Ry. Express Co. v. Lindenburg, 260 U. S. 584, 591-592.) Plaintiff is limited to a recovery of $50 the stated value limitation.
Judgment for plaintiff for $50 is allowed. Costs to defendant. Exhibits may be called for at clerk’s office.